IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CCP GOLDEN/7470 LLC; | ) | |
| CCP COLONY OAKS 0767 LLC; | ) | |
| CCP VALLHAVEN 0770 LLC; and | ) | |
| CCP KENNEDY PARK 0771 LLC | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No.: _____ |
| | ) | |
| KEVIN BRESLIN; | ) | |
| WILLIAM G. BURRIS, JR.; | ) | |
| WILLIAM G. BURRIS, III; | ) | |
| MARY THERESA KHAWLY; | ) | |
| VINCENT TUFARIELLO; | ) | |
| ELIA ZOIS; and | ) | |
| KBWB OPERATIONS, LLC | ) | |
| | ) | |
| Defendants. | ) | |

---

**COMPLAINT**

---

Plaintiffs, CCP Golden/7470 LLC ("CCP Golden"), f/k/a Nationwide Health Properties Finance Corporation; CCP Colony Oaks 0767 LLC ("CCP Colony Oaks"); CCP Vallhaven 0770 LLC ("CCP Vallhaven"); and CCP Kennedy Park 0771 LLC ("CCP Kennedy Park") (collectively, "Plaintiffs"), state as follows for their Complaint against defendants, Kevin Breslin ("Breslin"); William G. Burris, Jr. ("Burris, Jr."); William G. Burris, III ("Burris, III"); Mary Theresa Khawly ("Khawly"); Vincent Tufariello ("Tufariello"); Elia Zois ("Zois"); and KBWB Operations, LLC ("KBWB Operations" or "Entity Guarantor") (collectively, "Defendants"):

**NATURE OF THE ACTION**

1. In this action, Plaintiffs, who were landlords of certain skilled nursing facilities they leased to non-party tenants to operate, seek to recover amounts owed by Defendants pursuant to

Defendants' absolute and unconditional guarantees of the tenants' performance of their obligations under the leases and tenants' breaches of the leases.

## THE PARTIES

2.      CCP Golden is a Delaware limited liability company. CCP Golden was the owner of real estate located at 810 Memorial Drive, Chilton, Wisconsin 53014 (the "Chilton Property").

3.      CCP Colony Oaks is a Delaware limited liability company. CCP Colony Oaks was the owner of real estate located at 601 North Briarcliff Drive, Appleton, Wisconsin 54915 (the "Appleton Property").

4.      CCP Vallhaven is a Delaware limited liability company. CCP Vallhaven was the owner of real estate located at 125 Byrd Avenue, Neenah, Wisconsin 54956 (the "Neenah Property").

5.      CCP Kennedy Park is a Delaware limited liability company. CCP Kennedy Park was the owner of real estate located at 6001 Alderson Street, Schofield, Wisconsin 54476 (the "Weston Property") (collectively, the Appleton Property, Neenah Property, and Weston Property are the "Master Lease Properties").

6.      The sole member of each of the Plaintiffs is Sabra Health Care Limited Partnership, a Delaware limited partnership. The general partner of Sabra Health Care Limited Partnership is Sabra Health Care REIT, Inc., a Maryland corporation with a principal place of business in California. The limited partner of Sabra Health Care Limited Partnership is Sabra Health Care, L.L.C., a Delaware limited liability company, which has as its sole member Sabra Health Care REIT, Inc. Accordingly, for purposes of diversity jurisdiction, Plaintiffs are each a citizen of Maryland and California.

7.      Breslin is a citizen of New Jersey.

8.      Burris, Jr. is a citizen of New Jersey.

9.      Burris, III is a citizen of New Jersey.

10.     Khawly is a citizen of New York.

11.     Tufariello is a citizen of New Jersey.

12.     Zois is a citizen of New Jersey (collectively, Breslin, Burris, Jr., Burris, III, Khawly, Tufariello, and Zois are the "Individual Guarantors").[1]

13.     KBWB Operations is a New Jersey limited liability company with its principal place of business in Wayne, New Jersey. KBWB Operations' members are Breslin, Burris, Jr., Burris, III, Khawly, Tufariello, and Zois. Therefore, for purposes of diversity jurisdiction, it is a citizen of New York and New Jersey.

## JURISDICTION & VENUE

14.     This Court has personal jurisdiction over Defendants because Defendants consented to jurisdiction in the federal and state courts of Illinois for any dispute arising out of the guarantees. *See* Exhibits A-1, A-2, B-1, and B-2, at § 8(a).

15.     This Court has subject-matter jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332.

16.     Venue is proper in this Court because Defendants waived any objection to venue in any action on the Guarantees if filed in either the Illinois federal or state courts. *See* Exhibits A-1, A-2, B-1, and B-2, at § 8(b).

## FACTUAL BACKGROUND

### I.     The Chilton Lease and Chilton Guaranty

17.     On or about June 20, 2003, CCP Golden (then known as Nationwide Health Properties Finance Corporation) entered into a Lease Agreement (as amended from time to time, the "Chilton Lease") with non-party Chilton Care Center, LLC ("Chilton Tenant").

---

[1] Zois previously filed a voluntary petition for a Chapter 7 bankruptcy in the United States District Court for the District of New Jersey. *In re Zois*, Case No. 19-12556 (Bankr. D.N.J.). By Order entered July 17, 2020, Zois's discharge was denied pursuant to 11 U.S.C. § 727(a)(2)(B), (a)(3), (a)(4), and (a)(5) and Zois's debts were ordered to be nondischargeable. *See* Order, Doc. No. 95, *In re Zois*, Case No. 19-12556 (Bankr. D.N.J.). On July 20, 2020, the bankruptcy court entered a Final Decree closing the bankruptcy matter. *See* Final Decree, Doc. No. 98, *In re Zois*, Case No. 19-12556 (Bankr. D.N.J.). Accordingly, Plaintiffs' claims against Zois have not been discharged and there is no pending stay of actions against Zois.

3

18.     Pursuant to the Chilton Lease, Chilton Tenant leased from CCP Golden the real property and improvements (the "Chilton Premises") of a skilled nursing facility (the "Chilton Facility") in Chilton, Wisconsin.

19.     On or about June 20, 2003, Rice Enterprises, which was, at the time, an affiliate of Chilton Tenant, executed a Guaranty of Lease and Letter of Credit Agreement by which, among other things, Rice Enterprises guaranteed Chilton Tenant's obligations under the Chilton Lease.

20.     CCP Golden, Chilton Tenant, and Rice Enterprises executed a First Amendment to Lease on September 1, 2008 to amend the Chilton Lease as set forth in the First Amendment to Lease.

21.     Chilton Tenant exercised its right to extend the term of the Chilton Lease for an additional five years, until August 31, 2018.

22.     On or about August 29, 2014, Chilton Tenant, Rice Enterprises, and other of their affiliates entered into an agreement with non-party KBWB Operations-Rice, LLC ("KBWB Rice") for KBWB Rice to purchase the equity of Chilton Tenant.

23.     Individual Guarantors are members of KBWB Rice, and Entity Guarantor is an affiliate of KBWB Rice.

24.     The Chilton Lease prohibited the sale of any interest in Chilton Tenant without the prior written consent of CCP Golden.

25.     On or about December 31, 2014, CCP Golden entered into a Second Amendment to Lease with Chilton Tenant, Rice Enterprises, KBWB Rice, Entity Guarantor, and Individual Guarantors setting forth, among other things, the agreed-upon terms by which CCP Golden would consent to the sale of the equity of Chilton Tenant to KBWB Rice. Such terms included that Entity Guarantor, Individual Guarantors, and KBWB Rice would guaranty, jointly and severally, the obligations of Chilton Tenant under the Chilton Lease.

26. On or about December 31, 2014, Individual Guarantors executed a Guaranty of Lease in favor of CCP Golden (the "Chilton Individual Guaranty") unconditionally guaranteeing payment to CCP Golden of all amounts owed to CCP Golden under the Chilton Lease and the performance of all other obligations owed by Chilton Tenant under the Chilton Lease. A copy of the Chilton Individual Guaranty is attached as **Exhibit A-1**.

27. On or about December 31, 2014, Entity Guarantor executed a Guaranty of Lease in favor of CCP Golden (the "Chilton Entity Guaranty" and together with the Chilton Individual Guaranty, the "Chilton Guarantees") unconditionally guaranteeing payment to CCP Golden of all amounts owed to CCP Golden under the Chilton Lease and the performance of all other obligations owed by Chilton Tenant under the Chilton Lease. A copy of the Chilton Entity Guaranty is attached as **Exhibit A-2**.

## II. The Master Lease and Master Lease Guaranty

28. On or about December 31, 2015, CCP Colony Oaks, CCP Vallhaven, and CCP Kennedy Park (together, the "Master Lease Landlords") entered into a Master Lease Agreement (as amended from time to time, the "Master Lease") with non-parties (a) 601 Briarcliff Drive Operating Company, LLC, (b) 125 Byrd Avenue Operating Company, LLC, and (c) 6001 Alderson Street Operating Company, LLC (collectively, the "Master Lease Tenants") for Master Lease Tenants to lease from Master Lease Landlords the real property and improvements (the "Master Lease Premises") of skilled nursing facilities in Appleton, Neenah, and Weston, Wisconsin (the "Master Lease Facilities").[2]

29. Contemporaneous with execution of the Master Lease, Individual Guarantors executed a Guaranty of Lease in favor of Master Lease Landlords (the "Master Lease Individual Guaranty") unconditionally guaranteeing payment to Master Lease Landlords of all amounts owed to

---

[2] Capitalized terms not defined herein have the meaning ascribed to them in the Master Lease.

Master Lease Landlords under the Master Lease and the performance of all other obligations of Master Lease Tenants under the Master Lease. A copy of the Master Lease Individual Guaranty is attached as **Exhibit B-1.**

30.     Contemporaneous with execution of the Master Lease, Entity Guarantor executed a Guaranty of Lease in favor of Master Lease Landlords (the "Master Lease Entity Guaranty") unconditionally guaranteeing payment to Master Lease Landlords of all amounts owed to Master Lease Landlords under the Master Lease and the performance of all other obligations of Master Lease Tenants under the Master Lease. A copy of the Master Lease Entity Guaranty is attached as **Exhibit B-2.**

31.     The Master Lease was amended by a First Amendment to Master Lease dated as of December 31, 2015 and a Second Amendment to Master Lease dated as of June 1, 2016.

**III.     Agreement Regarding Exercise of Purchase Options and Further Lease Amendments.**

32.     Pursuant to Section 24.1 of the Chilton Lease, which Section was added to the Chilton Lease by the Second Amendment thereto dated December 31, 2014, Chilton Tenant had the option to purchase the Chilton Premises from CCP Golden for a purchase price to be calculated as set forth therein pursuant to the option exercise procedure set forth therein.

33.     Pursuant to Section 20.1 of the Master Lease, Master Lease Tenants had the option to purchase the Master Lease Premises from Master Lease Landlords for a purchase price to be calculated as set forth therein pursuant to the option exercise procedure set forth therein.

34.     On or about April 17, 2017, Plaintiffs entered into an Agreement Regarding Exercise of Purchase Options (as amended from time to time, the "Purchase Option Exercise Agreement") with Master Lease Tenants and Chilton Tenant (together, "Tenant Entities"). The Purchase Option Exercise Agreement provided that Tenant Entities desired to exercise their options to purchase the

Master Lease Premises and Chilton Premises (together, "Premises") early and Plaintiffs agreed to such exercise on the terms and conditions set forth in the Purchase Option Exercise Agreement.

35.     Pursuant to the Purchase Option Exercise Agreement, rather than paying an earnest money deposit to Plaintiffs (as required by the Master Lease and Chilton Lease), Tenant Entities agreed that in the event of circumstances wherein Plaintiffs would have been entitled to retain the earnest money deposit due to a default by Tenant Entities in their obligations with respect to the exercise of the purchase options, Tenant Entities would pay liquidated damages to Plaintiffs in the amount the earnest money deposit would have been under the Master Lease and Chilton Lease, less $105,278.59 for the amount due under the Master Lease only. Tenant Entities agreed that such liquidated damages would be a monetary obligation under the Master Lease and Chilton Lease.

36.     The Purchase Option Exercise Agreement called for the sale of the Premises to Tenant Entities to occur on May 31, 2017, subject to the rights of Tenant Entities and Plaintiffs each to extend the closing date one time for up to 60 days.

37.     In connection with, and as a part of, the Purchase Option Exercise Agreement, Individual Guarantors, Entity Guarantor, and KBWB Rice executed a Reaffirmation by Guarantors reaffirming their obligations under the Chilton Individual Guaranty, Chilton Entity Guaranty, Master Lease Individual Guaranty, and Master Lease Entity Guaranty (together the "Guarantees") and acknowledging that they were guaranteeing Tenant Entities' obligations to pay liquidated damages to Plaintiffs under the Purchase Option Exercise Agreement.

38.     On or about July 27, 2017, Plaintiffs and Tenant Entities executed a First Amendment to Agreement Regarding Exercise of Purchase Options ("First Amendment to Purchase Option Exercise Agreement") extending the closing date for the purchase of the Premises to September 30, 2017.

39. Individual Guarantors, Entity Guarantors, and KBWB Rice executed a Reaffirmation by Guarantors in connection with the First Amendment to Purchase Option Exercise Agreement again reaffirming their obligations under the Guarantees.

40. On or about July 26, 2018, Plaintiffs and Tenant Entities executed a Second Amendment to Agreement Regarding Exercise of Purchase Options ("Second Amendment to Purchase Option Exercise Agreement").

41. The Second Amendment to Purchase Option Exercise Agreement extended the closing date until March 31, 2019.

42. The Second Amendment to Purchase Option Exercise Agreement provided that the option purchase price for the Premises as of the date of the Second Amendment to Purchase Option Exercise Agreement equaled $16,052,660.30, which was subject to future increase in accordance with the terms of the Chilton Lease and Master Lease.

43. Individual Guarantors, Entity Guarantors, and KBWB Rice executed a Reaffirmation by Guarantors in connection with the Second Amendment to Purchase Option Exercise Agreement again reaffirming their obligations under the Guarantees.

44. Also on or about July 26, 2018, Plaintiffs, Tenant Entities, Individual Guarantors, and Entity Guarantor executed a Third Amendment to Master Lease and the same parties and KBWB Rice executed a Third Amendment to Lease relating to the Chilton Lease. Pursuant to those third amendments to the two leases, the Chilton Lease's term was extended to be coterminous with the Master Lease and the Chilton Lease and Master Lease were cross-defaulted (i.e. a default under one would constitute a default under the other) and cross-collateralized.

## IV.    Tenant Entities Default under the Leases

45.    The Master Lease and the Chilton Lease require Tenant Entities to pay "Minimum Rent" (as that term is defined in the Master Lease and the Chilton Lease) on a monthly basis on the first day of the month.

46.    The Master Lease and Chilton Lease provide that it is an Event of Default for which there is no cure period if Tenant Entities fail to pay any rent or other amounts due to Plaintiffs within five days of the due date.

47.    Master Lease Tenants failed to pay Minimum Rent due in August of 2018 and thereafter.

48.    Chilton Tenant failed to pay Minimum Rent due in September of 2018 and thereafter.

49.    The Master Lease and Chilton Lease provide that it is an Event of Default if a receiver is appointed for any of the Tenant Entities or any of their property.

50.    On September 7, 2018, MidCap Funding IV Trust and MidCap Funding VII Trust (together "MidCap") filed a lawsuit in the Circuit Court of Wood County, Wisconsin captioned *MidCap Funding IV Trust v. Chilton Care Center, LLC*, Case No. 2018CV000328 (Wood Cty., Wis., Cir. Ct.) (the "Receivership Action") against Tenant Entities, KBWB Rice, and other affiliates relating to alleged defaults by defendants in that suit on loans made by MidCap. MidCap sought appointment of a receiver for the defendants in that suit to operate the facilities that were operated by such defendants, including the Master Lease Facilities and the Chilton Facility.

51.    The Tenant Entities, KBWB Rice, and the other defendants in the Receivership Action consented to the appointment of a receiver over them and the facilities they operated.

52.    On September 7, 2018, the Court in the Receivership Action entered an Order appointing a receiver for, among others, the Tenant Entities and KBWB Rice.

9

53.     As a result of these and other Events of Default, Plaintiffs have been damaged, including as follows:

      a.   Plaintiffs have not received any payment of rent due under the Master Lease after July 2018 and any payment of rent due under the Chilton Lease after August of 2018;

      b.   Plaintiffs have been deprived of payment of other amounts due under the Master Lease and Chilton Lease, including interest, late fees, and amounts due for property taxes relating to the Facilities;

      c.   Tenant Entities failed to complete the purchase of the Premises pursuant to their exercises of the purchase options under the Master Lease and Chilton Lease;

      d.   The receiver for Tenant Entities and KBWB Rice relocated all residents of the Facilities, causing the Facilities to lose their licenses and other permits and authorizations necessary to operate the Premises as skilled nursing facilities, which greatly diminished the value of the Premises; and

      e.   Plaintiffs have not received any payment of damages relating to the diminished value of the Premises or Tenant Entities' failure to complete the purchase of the Premises.

54.     Individual Guarantor and Entity Guarantor agreed in the Guarantees to pay all costs of collection or enforcement incurred by Plaintiffs. *See* Master Lease Individual Guaranty § 10.2; Master Lease Entity Guaranty § 11.2; Chilton Individual Guaranty § 10.2; Chilton Entity Guaranty § 11.2.

### COUNT I – BREACH OF GUARANTEES

55.     Plaintiffs incorporate by reference the allegations set forth above by reference.

56. The Guarantees are binding and enforceable agreements between Plaintiffs and Defendants.

57. Pursuant to the Guarantees, Defendants unconditionally guaranteed payment to Plaintiffs of all amounts due by Tenant Entities under the Master Lease and the Chilton Lease (including and the performance of all obligations owed by Tenant Entities under the Master Lease and the Chilton Lease.

58. Plaintiffs performed all obligations under the Master Lease and Chilton Lease.

59. Tenant Entities defaulted under, and materially breached, the Master Lease and Chilton Lease.

60. Defendants have failed and refused to pay Plaintiffs amounts due by Tenant Entities under the Master Lease and Chilton Lease and have failed and refused otherwise to make Plaintiffs whole as a result of Tenant Entities' breaches of the Master Lease and Chilton Lease.

61. Accordingly, Defendants have materially breached the Guarantees.

62. As a direct and proximate result of the material breach of the Guarantees by Defendants, Plaintiffs have suffered damages in an amount in excess of $75,000 exclusive of interest and costs and in an amount to be proved at trial.

63. Pursuant to the Guarantees, Plaintiffs are entitled to their attorneys' fees and costs.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the Court to enter judgment against Defendants as follows:

A. Compensatory damages in an amount to be awarded at trial;

B. Pre-judgment interest;

C. Post-judgment interest; and

D. Plaintiffs' attorneys' fees and costs;

Dated: July 30, 2021

By: /s/ Richard A. Saldinger
Richard A. Saldinger
Latimer LeVay Fyock LLC
55 W. Monroe Street, Suite 1100
Chicago, IL 60603
rsaldinger@llflegal.com
(312) 667-1359

- and -

/s/ Matthew C. Williams
Benjamin C. Fultz
Matthew C. Williams
FULTZ MADDOX DICKENS PLC
101 South Fifth Street, 27th Floor
Louisville, Kentucky 40202
Phone: (502) 588-2000
bfultz@fmdlegal.com
mwilliams@fmdlegal.com
*Attorneys for Plaintiff*

Exhibit A-1

## GUARANTY OF LEASE

THIS **GUARANTY OF LEASE** (this "**Guaranty**") is made as of December 31, 2014, by **VINCENT TUFARIELLO**, **KEVIN P. BRESLIN**, **WILLIAM G. BURRIS, JR.**, **WILLIAM G. BURRIS III**, **MARY THERESA KHAWLY**, and **ELIA ZOIS**, each, an individual (individually and collectively, "**Guarantor**"), to **NATIONWIDE HEALTH PROPERTIES FINANCE CORPORATION**, a Delaware corporation ("**Landlord**").

## R E C I T A L S

A.      Landlord and Chilton Care Center, LLC, a Wisconsin limited liability company ("**Tenant**"), are parties to that certain Lease, dated as of June 20, 2003, as amended by that certain First Amendment to Lease, dated as of September 1, 2008 (as amended, the "**Original Lease**"), pursuant to which Tenant leases from Landlord certain real property, improvements and personal property located in Wisconsin, as more fully identified in the Lease (the "**Premises**").

B.      KBWB Operations-Rice, LLC ("**Purchaser**"), Tenant, certain Affiliates of Tenant and certain other Persons are parties to that certain Securities Purchase and Lease Agreement, dated as of August 29, 2014, pursuant to which Purchaser will purchase 100% of the outstanding equity securities of Tenant (the "**Sale**").  Immediately after completion of the Sale, Purchaser will transfer 100% of the outstanding equity securities of Tenant to Chilton Care Center Holding, LLC, an Affiliate of Purchaser (collectively, with the Sale, the "**Transaction**").

C.      Tenant has requested that Landlord consent to the Transaction, which will result in a change in the Persons who ultimately exert effective Control over the management and affairs of Tenant.

D.      Landlord has agreed to consent to the Transaction, subject to the terms and conditions of that certain Second Amendment to Lease between Landlord, Tenant, Rice Enterprises, Guarantor, Purchaser and KBWB Operations, LLC, dated as of the date of this Guaranty (the "**Amendment**").  The Original Lease, as amended by the Amendment, shall be referred to in this Guaranty as the "**Lease**".

E.      After the Transaction, Guarantor will own a membership interest in the limited liability company that owns a controlling interest in the sole member of Tenant, and will derive substantial economic benefit from the execution and delivery of the Lease.

F.      Guarantor acknowledges that Landlord would not enter into the Amendment or consent to the Transaction unless this Guaranty accompanied the execution and delivery of the Amendment.

G.      Guarantor hereby acknowledges receipt of a copy of the Original Lease and Amendment.

**NOW, THEREFORE**, in consideration of the execution and delivery of the Amendment and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Guarantor covenants and agrees as follows:

00973659.3

1.      **DEFINITIONS**.  Defined terms used in this Guaranty and not otherwise defined herein have the meanings assigned to them in the Lease.

2.      **COVENANTS OF GUARANTOR**.

2.1      Guarantor absolutely, unconditionally and irrevocably guarantees, as a primary obligor and not merely as a surety: (i) the full and prompt payment of all Minimum Rent, Taxes, Other Charges and all other rent, sums and charges of every type and nature payable by Tenant under the Lease, whether due by acceleration or otherwise, including costs and expenses of collection (collectively, the "**Monetary Obligations**"), and (ii) the full, timely and complete performance of all covenants, terms, conditions, obligations, indemnities and agreements to be performed by Tenant under the Lease, including any indemnities or other obligations of Tenant that survive the expiration or earlier termination of the Lease (all of the obligations described in clauses (i) and (ii), are collectively referred to herein as the "**Obligations**").  Guarantor acknowledges that the Obligations include Tenant's obligations under Section 24 of the Lease, including the payment of the Option Purchase Price and the consummation of the purchase of the Premises after an exercise of the Purchase Option or Put Option.

2.2      Guarantor agrees with Landlord that (i) any action, suit or proceeding of any kind or nature whatsoever (an "**Action**") commenced by Landlord against Tenant, Guarantor or any other guarantor of the Lease ("**Other Guarantor**") to collect Minimum Rent and any other rent, sums and charges due under the Lease for any month or months shall not prejudice in any way Landlord's rights to collect any such amounts due for any subsequent month or months throughout the Term in any subsequent Action against Tenant, Guarantor or any Other Guarantor, (ii) Landlord may, at its option, without prior notice or demand, join Guarantor in any Action against Tenant or any Other Guarantor in connection with or based upon either or both of the Lease and any of the Obligations, (iii) Landlord may seek and obtain recovery against Guarantor in an Action against Tenant or any Other Guarantor, or in any independent Action against Guarantor without Landlord first asserting, prosecuting, or exhausting any remedy or claim against Tenant or any Other Guarantor or against any security of Tenant held by Landlord under the Lease, (iv) Landlord may (but shall not be required to) exercise its rights against each of Tenant, Guarantor or any Other Guarantor concurrently, and (v) Guarantor will be conclusively bound by a judgment entered in any Action in favor of Landlord against Tenant or any Other Guarantor, as if Guarantor were a party to such Action, irrespective of whether or not Guarantor is entered as a party or participates in such Action.

2.3      Any default or failure by Guarantor to perform any of its Obligations under this Guaranty shall be deemed an immediate Event of Default by Tenant under the Lease.  Landlord's enforcement of its rights and remedies under this Guaranty against Guarantor with respect to any breach of or default under the Lease shall be subject to any applicable cure periods set forth in the Lease, and Guarantor shall have the benefit of any such cure periods (which Guarantor cure periods shall run concurrently with, and not in addition to, any Tenant cure periods).

2.4      Guarantor agrees that, in the event of the rejection or disaffirmance of the Lease by Tenant or Tenant's trustee in bankruptcy, pursuant to bankruptcy law or any other law

affecting creditors' rights, Guarantor will, if Landlord so requests, assume all obligations and liabilities of Tenant under the Lease, to the same extent as if Guarantor was a party to such document and there had been no such rejection or disaffirmance; and Guarantor will confirm such assumption, in writing, at the request of Landlord upon or after such rejection or disaffirmance. Guarantor, upon such assumption, shall have all rights of Tenant under the Lease to the fullest extent permitted by law.

2.5     If Landlord proposes to grant a mortgage on, or refinance any mortgage encumbering the Premises or any portion thereof, Guarantor shall cooperate in the process, and shall permit Landlord and the proposed mortgagee to meet with Guarantor or, if applicable, officers of Guarantor and to discuss Guarantor's business and finances. On request of Landlord, Guarantor agrees to provide any such prospective mortgagee the information to which Landlord is entitled hereunder, provided that if any such information is not publicly available, such nonpublic information shall be made available on a confidential basis. Guarantor agrees to execute, acknowledge and deliver documents requested by the prospective mortgagee (such as a consent to the financing, without encumbering Guarantor's or Tenant's assets, a consent to a collateral assignment of the Lease and of this Guaranty, estoppel certificate, and a subordination, non-disturbance and attornment agreement), customary for tenants and their guarantors to sign in connection with mortgage loans to landlords, so long as such documents are in form then customary among institutional lenders (provided the same do not materially and adversely change Tenant's rights or obligations under the Lease or materially and adversely change Guarantor's rights and obligations under this Guaranty).

3.     **GUARANTOR'S OBLIGATIONS UNCONDITIONAL**.

3.1     This Guaranty is an absolute and unconditional guaranty of payment and of performance, and not of collection, and shall be enforceable against Guarantor without the necessity of the commencement by Landlord of any Action against Tenant, and without the necessity of any notice of nonpayment, nonperformance or nonobservance, or any notice of acceptance of this Guaranty, or, subject to **Section 2.3**, of any other notice or demand to which Guarantor might otherwise be entitled, all of which Guarantor hereby expressly waives in advance. The obligations of Guarantor hereunder are independent of, and may exceed, the obligations of Tenant.

3.2     This Guaranty shall apply notwithstanding any extension or renewal of the Lease, or any holdover following the expiration or termination of the Lease Term or any renewal or extension of the Lease Term.

3.3     This Guaranty is a continuing guarantee and will remain in full force and effect notwithstanding, and the liability of Guarantor hereunder shall be absolute and unconditional irrespective of any or all of the following: (i) any renewals, extensions, modifications, alterations or amendments of the Lease (regardless of whether Guarantor consented to or had notice of same); (ii) any releases or discharges of Tenant or any Other Guarantor other than the full release and complete discharge of all of the Obligations; (iii) Landlord's failure or delay to assert any claim or demand or to enforce any of its rights against Tenant or any Other Guarantor; (iv) any extension of time that may be granted by Landlord to Tenant or any Other Guarantor; (v) any assignment or transfer of all of any part of

Tenant's interest under the Lease (whether by Tenant, by operation of law, or otherwise); (vi) any subletting, concession, franchising, licensing or permitting of the Premises or any portion thereof; (vii) any changed or different use of the Premises (or any portion thereof); (viii) any other dealings or matters occurring between Landlord and Tenant or any Other Guarantor; (ix) the taking by Landlord of any additional guarantees, or the receipt by Landlord of any collateral, from Tenant, any Other Guarantor or any other persons or entities; (x) the release by Landlord of any Other Guarantor; (xi) Landlord's release of any security provided under the Lease or any other guaranty; (xii) Landlord's failure to perfect any landlord's lien or other lien or security interest available under applicable federal, state or local laws, rules or regulations ("**Legal Requirements**"); (xiii) any assumption by any person of any or all of Tenant's obligations under the Lease or any Other Guarantor's obligations under any other guaranty, or Tenant's assignment of any or all of its rights and interests under the Lease, (xiv) the power or authority or lack thereof of Tenant to execute, acknowledge or deliver the Lease; (xv) the existence, non-existence or lapse at any time of Tenant as a legal entity or the existence, non-existence or termination of any corporate, ownership, business or other relationship between Tenant and Guarantor; (xvi) any sale or assignment by Landlord of any or all of this Guaranty, any other guaranty and the Lease (including any direct or collateral assignment by Landlord to any mortgagee); (xvii) the solvency or lack of solvency of Tenant or any Other Guarantor at any time or from time to time; or (xviii) any other cause, whether similar or dissimilar to any of the foregoing, that might constitute a legal or equitable discharge of Guarantor (whether or not Guarantor shall have knowledge or notice thereof) other than payment and performance in full of the Obligations. Without in any way limiting the generality of the foregoing, Guarantor specifically agrees that (A) if Tenant's obligations under the Lease are modified or amended with the express written consent of Landlord, this Guaranty shall extend to such obligations as so amended or modified without notice to, consideration to, or the consent of, Guarantor, and (B) this Guaranty shall be applicable to any obligations of Tenant arising in connection with a termination of the Lease, whether voluntary or otherwise. Guarantor hereby consents, prospectively, to Landlord's taking or entering into any or all of the foregoing actions or omissions. For purposes of this Guaranty and the obligations and liabilities of Guarantor hereunder, "**Tenant**" shall be deemed to include any and all concessionaires, licensees, franchisees, department operators, assignees, subtenants, permittees or others directly or indirectly operating or conducting a business in or from the Premises or any portion thereof, as fully as if any of the same were the named Tenant under the Lease.

3.4    Guarantor hereby expressly agrees that the validity of this Guaranty and the obligations of Guarantor hereunder shall in no way be terminated, affected, diminished or impaired by reason of the assertion or the failure to assert by Landlord against Tenant, of any of the rights or remedies reserved to Landlord pursuant to the provisions of the Lease or by relief of Tenant from any of Tenant's obligations under the Lease or otherwise by (i) the release or discharge of Tenant in any state or federal creditors' proceedings, receivership, bankruptcy or other proceeding; (ii) the impairment, limitation or modification of the liability of Tenant or the estate of Tenant in bankruptcy, or of any remedy for the enforcement of Tenant's liability under the Lease, resulting from the operation of any present or future provision of the United States Bankruptcy Code (11 U.S.C. § 101 et seq., as amended), or from other statute, or from the order of any court; or (iii) the rejection, disaffirmance or other termination of the Lease in any such proceeding. This Guaranty shall continue to be effective if at any time the payment of any amount due under the Lease or this Guaranty is rescinded or must otherwise be returned by

Landlord for any reason, including the insolvency, bankruptcy, liquidation or reorganization of Tenant, Guarantor or otherwise, all as though such payment had not been made, and, in such event, Guarantor shall pay to Landlord an amount equal to any such payment that has been rescinded or returned.

4.      **WAIVERS OF GUARANTOR**.

4.1      Without limitation of the foregoing, Guarantor waives (i) notice of acceptance of this Guaranty, protest, demand and dishonor, presentment, and demands of any kind now or hereafter provided for by any statute or rule of law, (ii) notice of any actions taken by Landlord or Tenant under the Lease or any other agreement or instrument relating thereto, (iii) notice of any and all defaults by Tenant in the payment of Minimum Rent or other rent, charges or amounts, or of any other defaults by Tenant under the Lease, (iv) all other notices, demands and protests, and all other formalities of every kind in connection with the enforcement of the Obligations, omission of or delay in which, but for the provisions of this **Section 4**, might constitute grounds for relieving Guarantor of its obligations hereunder, (v) any requirement that Landlord protect, secure, perfect, insure or proceed against any security interest or lien, or any property subject thereto, or exhaust any right or take any action against Tenant, any Other Guarantor or any other person or entity (including any additional guarantor or Guarantor) or against any collateral, and (vi) the benefit of any statute of limitations affecting Guarantor's liability under this Guaranty.

4.2      GUARANTOR HEREBY WAIVES TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY ANY PERSON OR ENTITY WITH RESPECT TO ANY MATTER WHATSOEVER ARISING OUT OF OR IN ANY WAY CONNECTED WITH: THIS GUARANTY; THE LEASE; ANY LIABILITY OR OBLIGATION OF TENANT IN ANY MANNER RELATED TO THE PREMISES OR ANY PORTION THEREOF; ANY CLAIM OF INJURY OR DAMAGE IN ANY WAY RELATED TO THE LEASE AND/OR THE PREMISES (OR ANY PORTION THEREOF); ANY ACT OR OMISSION OF TENANT, ITS AGENTS, EMPLOYEES, CONTRACTORS, SUPPLIERS, SERVANTS, CUSTOMERS, CONCESSIONAIRES, FRANCHISEES, PERMITTEES OR LICENSEES; OR ANY ASPECT OF THE USE OR OCCUPANCY OF, OR THE CONDUCT OF BUSINESS IN, ON OR FROM THE PREMISES (OR ANY PORTION THEREOF). GUARANTOR SHALL NOT INTERPOSE ANY COUNTERCLAIM OR COUNTERCLAIMS OR CLAIMS FOR SET-OFF, RECOUPMENT OR DEDUCTION OF RENT IN ANY ACTION BROUGHT BY LANDLORD AGAINST GUARANTOR UNDER THIS GUARANTY. GUARANTOR SHALL NOT BE ENTITLED TO MAKE, AND HEREBY WAIVES, ANY AND ALL DEFENSES AGAINST ANY CLAIM ASSERTED BY LANDLORD OR IN ANY SUIT OR ACTION INSTITUTED BY LANDLORD TO ENFORCE THIS GUARANTY OR THE LEASE.  IN ADDITION, GUARANTOR HEREBY WAIVES, BOTH WITH RESPECT TO THE LEASE AND WITH RESPECT TO THIS GUARANTY, ANY AND ALL RIGHTS WHICH ARE WAIVED BY TENANT UNDER THE LEASE, IN THE SAME MANNER AS IF ALL SUCH WAIVERS WERE FULLY RESTATED HEREIN.  THE LIABILITY OF GUARANTOR UNDER THIS GUARANTY IS PRIMARY AND UNCONDITIONAL.

4.3      Guarantor expressly waives any and all rights to defenses arising by reason of (i) any "one-action" or "anti-deficiency" law or any other law that may prevent

Landlord from bringing any action, including a claim for deficiency, against Guarantor before or after Landlord's commencement or completion of any action against Tenant or any Other Guarantor; (ii) ANY ELECTION OF REMEDIES BY LANDLORD (INCLUDING ANY TERMINATION OF THE LEASE) THAT DESTROYS OR OTHERWISE ADVERSELY AFFECTS GUARANTOR'S SUBROGATION RIGHTS OR GUARANTOR'S RIGHTS TO PROCEED AGAINST TENANT FOR REIMBURSEMENT; (iii) any disability, insolvency, bankruptcy, lack of authority or power, death, insanity, minority, dissolution, or other defense of Tenant, of any other guarantor (or any other Guarantor), or of any other person or entity, or by reason of the cessation of Tenant's liability from any cause whatsoever, other than full and final payment in legal tender and performance of the Obligations; (iv) any right to claim discharge of any or all of the Obligations on the basis of unjustified impairment of any collateral for the Obligations; (v) any change in the relationship between Guarantor and Tenant or any Other Guarantor or any termination of such relationship; (vi) any irregularity, defect or unauthorized action by any or all of Landlord, Tenant, any Other Guarantor or surety, or any of their respective officers, directors or other agents in executing and delivering any instrument or agreements relating to the Obligations or in carrying out or attempting to carry out the terms of any such agreements; (vii) any assignment, endorsement or transfer, in whole or in part, of the Obligations, whether made with or without notice to or consent of Guarantor; (viii) if the recovery from Tenant or any other Person (including any Other Guarantor) becomes barred by any statute of limitations or is otherwise prevented; (ix) the benefits of any and all statutes, laws, rules or regulations applicable in the State of Illinois which may require the prior or concurrent joinder of any other party to any action on this Guaranty; (x) any release or other reduction of the Obligations arising as a result of the expansion, release, substitution, deletion, addition, or replacement (whether or not in accordance with the terms of the Lease) of the Premises or any portion thereof; or (xi) any neglect, delay, omission, failure or refusal of Landlord to take or prosecute any action for the collection or enforcement of any of the Obligations or to foreclose or take or prosecute any action in connection with any lien or right of security (including perfection thereof) existing or to exist in connection with, or as security for, any of the Obligations, it being the intention hereof that Guarantor shall remain liable as a principal on the Obligations notwithstanding any act, omission or event that might, but for the provisions hereof, otherwise operate as a legal or equitable discharge of Guarantor. Guarantor hereby waives all defenses of a surety to which it may be entitled by statute or otherwise.

## 5. SUBORDINATION; SUBROGATION.

5.1     Guarantor subordinates to the Obligations (i) any present and future debts and obligations of Tenant or any Other Guarantor to Guarantor (the "**Indebtedness**"), including: (A) salary, bonuses, and other payments pursuant to any employment arrangement; (B) fees, reimbursement of expenses and other payments pursuant to any independent contractor arrangement; (C) principal and interest pursuant to any Indebtedness; (D) distributions payable to any partners, members or shareholders of Guarantor or Affiliates of Guarantor; (E) lease payments pursuant to any leasing arrangement; (F) any management fees; and (G) all rights, liens and security interests of Guarantor, whether now or hereafter arising, in any assets of the Tenant or any Other Guarantor, and (ii) any liens or security interests securing payment of the Indebtedness. Guarantor shall have no right to possession of any assets of Tenant or any Other Guarantor or to foreclose upon any such asset, whether by judicial action or otherwise, unless and until the Obligations have been paid and performed in full. Guarantor agrees that Landlord

shall be subrogated to Guarantor with respect to Guarantor's claims against Tenant or any Other Guarantor and Guarantor's rights, liens and security interest, if any, in any of Tenant's or any Other Guarantor's assets and proceeds thereof until all of the Obligations have been paid and performed in full.

5.2     After the occurrence of an Event of Default and until such Event of Default is cured or after the commencement of any bankruptcy or insolvency proceeding by or against Tenant and until such proceeding is dismissed, Guarantor shall not: (i) make any distributions, dividends or other similar payments to any partners, parent entities, or Affiliates of Guarantor (other than to Tenant); or (ii) ask for, sue for, demand, take or receive any payment, by setoff or in any other manner, including the receipt of a negotiable instrument, for all or any part of the Indebtedness owed by Tenant, or any successor or assign of Tenant, including a receiver, trustee or debtor in possession (the term "**Tenant**" shall include any such successor or assign of Tenant) until the Obligations have been paid in full; however, if Guarantor receives such a payment, Guarantor shall immediately deliver the payment to Landlord for credit against the then outstanding balance of the Obligations, whether matured or unmatured. Notwithstanding anything in this **Section 5** to the contrary, (a) prior to an Event of Default that has occurred and is continuing, management fees and reimbursements provided for in that certain Management Services Agreement between Tenant and Rice Management, Inc., an Affiliate of Guarantor, may be paid by Tenant as required thereunder, and (b) after an Event of Default has occurred and is outstanding, Guarantor may make cash contributions to Tenant.

5.3     Guarantor shall not be subrogated, and hereby waives and disclaims any claim or right against Tenant by way of subrogation or otherwise, to any of the rights of Landlord under the Lease or otherwise, or in the Premises (or any portion thereof), which may arise by any of the provisions of this Guaranty or by reason of the performance by Guarantor of any of its Obligations hereunder. Guarantor shall look solely to Tenant for any recoupment of any payments made or costs or expenses incurred by Guarantor pursuant to this Guaranty. If any amount shall be paid to Guarantor on account of such subrogation rights at any time when all of the Obligations shall not have been paid and performed in full, Guarantor shall immediately deliver the payment to Landlord for credit against the then outstanding balance of the Obligations, whether matured or unmatured.

6.     **REPRESENTATIONS AND WARRANTIES OF GUARANTOR**. Guarantor represents and warrants that:

6.1     This Guaranty is valid and binding upon and enforceable against Guarantor without the requirement of further action or condition.

6.2     The execution, delivery and performance by Guarantor of this Guaranty does not and will not (i) contravene any applicable Legal Requirements, the organizational documents of Guarantor, if applicable, any order, writ, injunction, decree applicable to Guarantor, or any contractual restriction binding on or affecting Guarantor or any of its properties or assets, or (ii) result in or require the creation of any lien, security interest or other charge or encumbrance upon or with respect to any of its properties or assets.

**6.3**     No approval, consent, exemption, authorization or other action by, or notice to, or filing with, any governmental authority is necessary or required in connection with the execution, delivery or performance by, or enforcement against, Guarantor of this Guaranty or any other instrument or agreement required hereunder.

**6.4**     There is no action, suit or proceeding pending or threatened against or otherwise affecting Guarantor before any court or other governmental authority or any arbitrator that may materially adversely affect Guarantor's ability to perform its obligations under this Guaranty.

**6.5**     Tenant is directly or indirectly owned and controlled by Guarantor.

**6.6**     Guarantor has derived or expects to derive financial and other advantages and benefits directly or indirectly, from the making of the Lease and the payment and performance of the Obligations.  Guarantor hereby acknowledges that Landlord will be relying upon Guarantor's guarantee, representations, warranties and covenants contained herein.

**6.7**     All reports, statements (financial or otherwise), certificates and other data furnished by or on behalf of Guarantor to Landlord in connection with this Guaranty or the Lease are:  true and correct, in all material respects, as of the applicable date or period provided therein; do not omit to state any material fact or circumstance necessary to make the statements contained therein not misleading; and fairly represent the financial condition of Guarantor as of the respective date thereof; and no material adverse change has occurred in the financial condition of Guarantor since the date of the most recent of such financial statements.

**7.**     **NOTICES**.  Any consents, notices, demands, requests, approvals or other communications given under this Guaranty shall be in writing and shall be given as provided in the Lease, as follows or to such other addresses as either Landlord or Guarantor may designate by notice given to the other in accordance with the provisions of this **Section 7**:

If to Guarantor:

Kevin Breslin
1120 Alps Road
Wayne, New Jersey 07470

William G. Burris, Jr.
744 Jeffrey Road
Moorestown, New Jersey 08057

William G. Burris, III
741 Cox Road
Moorestown, New Jersey 08057

Mary Theresa Khawly
888 S. Ocean Blvd
Palm Beach, Florida 33480

If to Landlord:

c/o Ventas, Inc.
10350 Ormsby Park Place, Suite 300
Louisville, Kentucky  40223
Attention:     Lease Administration
Telephone:     (502) 357-9000
Fax No.:     (502) 357-9001

With a copy to:

c/o Ventas, Inc.
353 N. Clark Street, Suite 3300
Chicago, Illinois 60654
Attention:  Legal Department
Telephone: (312) 660-3800
Fax No.: (312) 660-3850

Elia Zois
712 Morven Terrace
Sea Girt, New Jersey 08750

Vincent Tufariello
30 Old Farm Road
Basking Ridge, New Jersey 07920

**8.** **CONSENT TO JURISDICTION**.  Guarantor hereby (a) consents and submits to the jurisdiction of the courts of the State of Illinois and the federal courts sitting in the State of Illinois with respect to any dispute arising, directly or indirectly, out of this Guaranty, (b) waives any objections which the undersigned may have to the laying of venue in any such suit, action or proceeding in either such court, (c) agrees to join Landlord in any petition for removal to either such court, and (d) irrevocably designates and appoints Tenant as its authorized agent to accept and acknowledge on its behalf service of process with respect to any disputes arising, directly or indirectly, out of this Guaranty.  The undersigned hereby acknowledges and agrees that Landlord may obtain personal jurisdiction and perfect service of process through Tenant as the undersigned agent, or by any other means now or hereafter permitted by applicable law.  Nothing above shall limit Landlord's choice of forum for purposes of enforcing this Guaranty.

**9.** **CERTAIN ADDITIONAL COVENANTS**.

**9.1** **Financial Deliveries**.  Guarantor shall deliver the following information to Landlord:

**9.1.1** As soon as available and in any event within 45 days after the end of the second and fourth calendar quarter of each calendar year, in form satisfactory to Landlord, a personal financial statement for each Guarantor.  Together with Guarantor's financial statements, Guarantor shall furnish to Landlord a certificate, executed by each Guarantor, (a) certifying as of the date thereof whether to the best of such Guarantor's knowledge there exists an event or circumstance which constitutes a default or Event of Default under the Lease and if such default or Event of Default exists, the nature thereof, the period of time it has existed and the action then being taken to remedy the same, (b) and certifying that the information contained in such Guarantor's financial statement is true and correct in all material respects.

**9.1.2** Each Guarantor shall deliver to Landlord its annual federal tax returns within 30 days after the filing thereof with the Internal Revenue Service.

Upon the delivery of any financial information by or on behalf of Guarantor pursuant to this **Section 9** from time to time during the Lease Term, Guarantor shall be deemed (unless Guarantor specifically states otherwise in writing) to automatically represent and warrant to Landlord that the financial information delivered to Landlord is true, accurate and complete, presents fairly the financial condition of Guarantor as of the date thereof, and that there has been no adverse change in the financial condition of Guarantor since the date of the then applicable financial information.

**9.2** **Disclosure**.  Guarantor agrees that any financial statements of Guarantor required to be delivered to Landlord may, without the prior consent of, or notice to, Guarantor,

be included and disclosed, to the extent required by applicable law, regulation or stock exchange rule, in offering memoranda or prospectuses, or similar publications in connection with syndications, private placements or public offerings of Landlord's (or the entities directly or indirectly controlling Landlord) securities or interests, and in any registration statement, report or other document permitted or required to be filed under applicable federal and state laws, including those of any successor to Landlord. Guarantor agrees to provide such other reasonable financial and other information necessary to facilitate a private placement or a public offering or to satisfy the SEC or regulatory disclosure requirements.

9.3     **Review Right**.  Landlord shall have the right, from time to time during normal business hours after three Business Days prior oral or written notice to Guarantor, itself or through any attorney, accountant or other agent or representative retained by Landlord ("**Landlord's Representatives**"), to examine and audit all financial and other records of Guarantor at the office of Guarantor or such other Person that maintains such records and documents and to make such copies or extracts thereof as Landlord or Landlord's Representatives may request and Guarantor hereby agrees to reasonably cooperate with any such examination or audit; provided, however, the cost of such examination or audit shall be borne by Landlord, except during the continuation of an Event of Default, in which case, the cost of any such examination or audit shall be borne by Guarantor and shall be payable within 15 days of Landlord's written demand therefor.

9.4     **Assignment; Sale of Assets; Change in Control**.  Without the prior consent of Landlord, which consent may be withheld or granted in Landlord's sole discretion, Guarantor shall not assign (whether directly or indirectly), in whole or in part, this Guaranty or any obligation hereunder or, through one or more step transactions or tiered transactions, do, or permit to be done, any activity, transaction, assignment, subletting or transfer prohibited under **Section 16** of the Lease.

9.5     **Payment Method; Default Interest**.  Guarantor shall make any payments due hereunder in immediately available funds by wire transfer to Landlord's bank account as notified by Landlord, unless Landlord agrees to another method of payment of immediately available funds. If Guarantor does not pay an amount due hereunder on its due date, Guarantor shall pay, on demand, interest at the Agreed Rate on the amount due for a period ending on the full payment of such amount, including the day of repayment, whether before or after any judgment or award, to the extent permitted under applicable law.

10.     **MISCELLANEOUS**.

10.1     Guarantor further agrees that Landlord may, without notice, assign this Guaranty in whole or in part.  If Landlord disposes of its interest in the Lease, "**Landlord**", as used in this Guaranty, shall mean Landlord's successors and assigns.

10.2     Guarantor promises to pay all costs of collection or enforcement incurred by Landlord in exercising any remedies provided for in the Lease or this Guaranty whether at law or in equity.  If any legal action or proceeding is commenced to interpret or enforce the terms of, or obligations arising out of, this Guaranty, or to recover damages for the breach thereof, the party prevailing in any such action or proceedings shall be entitled to recover from

the non-prevailing party all attorneys' fees and reasonable costs and expenses incurred by the prevailing party. As used herein, "attorneys' fees" shall mean the fees and expenses of counsel to the parties hereto, which may include printing, photocopying, duplicating and other expenses, air freight charges, and fees billed for law clerks, paralegals, librarians and others not admitted to the bar but performing services under the supervision of an attorney. The term "attorneys' fees" shall also include all such fees and expenses incurred with respect to appeals, arbitrations and bankruptcy proceedings.

10.3    Guarantor shall, from time to time within 10 days after receipt of Landlord's request, execute, acknowledge and deliver to Landlord a statement certifying that this Guaranty is unmodified and in full force and effect (or if there have been modifications, that the same is in full force and effect as modified and stating such modifications), and setting forth such other information as Landlord may reasonably request. Such certificate may be relied upon by any prospective purchaser, lessor or lender of all or a portion of the Premises (or any portion thereof).

10.4    If any portion of this Guaranty shall be deemed invalid, unenforceable or illegal for any reason, such invalidity, unenforceability or illegality shall not affect the balance of this Guaranty, which shall remain in full force and effect to the maximum permitted extent.

10.5    The provisions, covenants and guaranties of this Guaranty shall be binding upon Guarantor and its heirs, successors, legal representatives and assigns, and shall inure to the benefit of Landlord and its successors and assigns, and shall not be deemed waived or modified unless such waiver or modification is specifically set forth in writing, executed by Landlord or its successors and assigns, and delivered to Guarantor.

10.6    Whenever the words "include", "includes", or "including" are used in this Guaranty, they shall be deemed to be followed by the words "without limitation", and, whenever the circumstances or the context requires, the singular shall be construed as the plural, the masculine shall be construed as the feminine and/or the neuter and vice versa. This Guaranty shall be interpreted and enforced without the aid of any canon, custom or rule of law requiring or suggesting construction against the party drafting or causing the drafting of the provision in question.

10.7    Each of the rights and remedies herein provided are cumulative and not exclusive of any rights or remedies provided by law or in the Lease or this Guaranty.

10.8    The provisions of this Guaranty shall be governed by and interpreted solely in accordance with the internal laws of the State of Illinois, without giving effect to the principles of conflicts of law.

10.9    The execution of this Guaranty prior to execution of the Amendment shall not invalidate this Guaranty or lessen the Obligations of Guarantor hereunder.

10.10    This Guaranty may be executed in multiple counterparts, each of which shall be an original, but all of which shall constitute but one instrument. The signature page of any counterpart may be detached therefrom and reattached to any other counterpart to physically form a single document. This Guaranty may be executed and delivered electronically (including

via email or facsimile transmission), which shall be deemed to be the execution and delivery of an original.

   **10.11** The Recitals set forth above are hereby incorporated by this reference and made a part of this Guaranty. Guarantor hereby represents and warrants that the Recitals are true and correct.

   **10.12** Guarantor hereby acknowledges and agrees to be bound by the restrictive covenants set forth in **Section 7.3** of the Lease.

   **10.13** Each entity or individual comprising Guarantor shall be jointly and severally liable to Landlord for the faithful performance of this Guaranty.

   **10.14** This Guaranty contains the entire agreement of Landlord and Guarantor as to the subject matter hereof and supersedes all prior written or oral agreements or understandings and contemporaneous oral agreements or understandings.

[SIGNATURE PAGE FOLLOWS]

**IN WITNESS WHEREOF,** Guarantor has executed this Guaranty as of the day and year first above written.

GUARANTOR:

_____

**VINCENT TUFARIELLO**, an individual

_____

**KEVIN P. BRESLIN**, an individual

_____

**WILLIAM G. BURRIS, JR.,** an individual

_____

**WILLIAM G. BURRIS III**, an individual

_____

**MARY THERESA KHAWLY**, an individual

_____

**ELIA ZOIS**, an individual

**IN WITNESS WHEREOF,** Guarantor has executed this Guaranty as of the day and year first above written.

GUARANTOR:

_____
**VINCENT TUFARIELLO**, an individual

_____
**KEVIN P. BRESLIN**, an individual

_____
**WILLIAM G. BURRIS, JR.**, an individual

_____
**WILLIAM G. BURRIS III**, an individual

_____
**MARY THERESA KHAWLY**, an individual

_____
**ELIA ZOIS**, an individual

00973659.3                              *Signature Page to Guaranty*

**IN WITNESS WHEREOF,** Guarantor has executed this Guaranty as of the day and year first above written.

GUARANTOR:

_____

**VINCENT TUFARIELLO,** an individual

_____

**KEVIN P. BRESLIN,** an individual

_____

**WILLIAM G. BURRIS, JR.,** an individual

_____

**WILLIAM G. BURRIS III,** an individual

_____

**MARY THERESA KHAWLY,** an individual

_____

**ELIA ZOIS,** an individual

00973659.3

*Signature Page to Guaranty*

**IN WITNESS WHEREOF,** Guarantor has executed this Guaranty as of the day and year first above written.

GUARANTOR:

_____

**VINCENT TUFARIELLO**, an individual

_____

**KEVIN P. BRESLIN**, an individual

_____

**WILLIAM G. BURRIS, JR.**, an individual

_____

**WILLIAM G. BURRIS III**, an individual

_____

**MARY THERESA KHAWLY**, an individual

_____

**ELIA ZOIS**, an individual

*Signature Page to Guaranty*

**IN WITNESS WHEREOF,** Guarantor has executed this Guaranty as of the day and year first above written.

GUARANTOR:

_____

**VINCENT TUFARIELLO**, an individual

_____

**KEVIN P. BRESLIN**, an individual

_____

**WILLIAM G. BURRIS, JR.**, an individual

_____

**WILLIAM G. BURRIS III**, an individual

_____

**MARY THERESA KHAWLY**, an individual

_____

**ELIA ZOIS**, an individual

00973659.3                    *Signature Page to Guaranty*

**IN WITNESS WHEREOF,** Guarantor has executed this Guaranty as of the day and year first above written.

GUARANTOR:

_____
**VINCENT TUFARIELLO**, an individual

_____
**KEVIN P. BRESLIN**, an individual

_____
**WILLIAM G. BURRIS, JR.**, an individual

_____
**WILLIAM G. BURRIS III**, an individual

_____
**MARY THERESA KHAWLY**, an individual

_____
**ELIA ZOIS**, an individual

*Signature Page to Guaranty*

# Exhibit A-2

## GUARANTY OF LEASE

THIS **GUARANTY OF LEASE** (this "**Guaranty**") is made as of December 31, 2014, by **KBWB OPERATIONS, LLC**, a New Jersey limited liability company ("**Guarantor**"), to **NATIONWIDE HEALTH PROPERTIES FINANCE CORPORATION**, a Delaware corporation ("**Landlord**").

## R E C I T A L S

A.      Landlord and Chilton Care Center, LLC, a Wisconsin limited liability company ("**Tenant**"), are parties to that certain Lease, dated as of June 20, 2003, as amended by that certain First Amendment to Lease, dated as of September 1, 2008 (as amended, the "**Original Lease**"), pursuant to which Tenant leases from Landlord certain real property, improvements and personal property located in Wisconsin, as more fully identified in the Lease (the "**Premises**").

B.      KBWB Operations-Rice, LLC ("**Purchaser**"), Tenant, certain Affiliates of Tenant and other Persons are parties to that certain Securities Purchase and Lease Agreement, dated as of August 29, 2014, pursuant to which Purchaser will purchase 100% of the outstanding equity securities of Tenant (the "**Sale**").  Immediately after completion of the Sale, Purchaser will transfer 100% of the outstanding equity securities of Tenant to Chilton Care Center Holding, LLC, an Affiliate of Purchaser (collectively, with the Sale, the "**Transaction**").

C.      Tenant has requested that Landlord consent to the Transaction, which will result in a change in the Persons who ultimately exert effective Control over the management and affairs of Tenant.

D.      Landlord has agreed to consent to the Transaction, subject to the terms and conditions of that certain Second Amendment to Lease between Landlord, Tenant, Rice Enterprises, Guarantor, KBWB Operations-Rice, LLC, Vincent Tufariello, Kevin P. Breslin, William G. Burris, Jr., William G. Burris III, Mary Theresa Khawly and Elia Zois, dated as of the date of this Guaranty (the "**Amendment**").  The Original Lease, as amended by the Amendment, shall be referred to in this Guaranty as the "**Lease**".

E.      After the Transaction, Guarantor will own a membership interest in the limited liability company that owns a controlling interest in Tenant, and will derive substantial economic benefit from the execution and delivery of the Lease.

F.      Guarantor acknowledges that Landlord would not enter into the Amendment or consent to the Transaction unless this Guaranty accompanied the execution and delivery of the Amendment.

G.      Guarantor hereby acknowledges receipt of a copy of the Original Lease and Amendment.

**NOW, THEREFORE**, in consideration of the execution and delivery of the Amendment and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Guarantor covenants and agrees as follows:

00976278.1

1. <u>**DEFINITIONS**</u>.  Defined terms used in this Guaranty and not otherwise defined herein have the meanings assigned to them in the Lease.

2. <u>**COVENANTS OF GUARANTOR**</u>.

2.1     Guarantor absolutely, unconditionally and irrevocably guarantees, as a primary obligor and not merely as a surety: (i) the full and prompt payment of all Minimum Rent, Taxes, Other Charges and all other rent, sums and charges of every type and nature payable by Tenant under the Lease, whether due by acceleration or otherwise, including costs and expenses of collection (collectively, the "**Monetary Obligations**"), and (ii) the full, timely and complete performance of all covenants, terms, conditions, obligations, indemnities and agreements to be performed by Tenant under the Lease, including any indemnities or other obligations of Tenant that survive the expiration or earlier termination of the Lease (all of the obligations described in clauses (i) and (ii), are collectively referred to herein as the "**Obligations**").  Guarantor acknowledges that the Obligations include Tenant's obligations under Section 24 of the Lease, including the payment of the Option Purchase Price and the consummation of the purchase of the Premises after an exercise of the Purchase Option or Put Option.

2.2     Guarantor agrees with Landlord that (i) any action, suit or proceeding of any kind or nature whatsoever (an "**Action**") commenced by Landlord against Tenant, Guarantor or any other guarantor of the Lease ("**Other Guarantor**") to collect Minimum Rent and any other rent, sums and charges due under the Lease for any month or months shall not prejudice in any way Landlord's rights to collect any such amounts due for any subsequent month or months throughout the Term in any subsequent Action against Tenant, Guarantor or any Other Guarantor, (ii) Landlord may, at its option, without prior notice or demand, join Guarantor in any Action against Tenant or any Other Guarantor in connection with or based upon either or both of the Lease and any of the Obligations, (iii) Landlord may seek and obtain recovery against Guarantor in an Action against Tenant or any Other Guarantor, or in any independent Action against Guarantor without Landlord first asserting, prosecuting, or exhausting any remedy or claim against Tenant or any Other Guarantor or against any security of Tenant held by Landlord under the Lease, (iv) Landlord may (but shall not be required to) exercise its rights against each of Tenant, Guarantor or any Other Guarantor concurrently, and (v) Guarantor will be conclusively bound by a judgment entered in any Action in favor of Landlord against Tenant or any Other Guarantor, as if Guarantor were a party to such Action, irrespective of whether or not Guarantor is entered as a party or participates in such Action.

2.3     Any default or failure by Guarantor to perform any of its Obligations under this Guaranty shall be deemed an immediate Event of Default by Tenant under the Lease.  Landlord's enforcement of its rights and remedies under this Guaranty against Guarantor with respect to any breach of or default under the Lease shall be subject to any applicable cure periods set forth in the Lease, and Guarantor shall have the benefit of any such cure periods (which Guarantor cure periods shall run concurrently with, and not in addition to, any Tenant cure periods).

2.4     Guarantor agrees that, in the event of the rejection or disaffirmance of the Lease by Tenant or Tenant's trustee in bankruptcy, pursuant to bankruptcy law or any other law

affecting creditors' rights, Guarantor will, if Landlord so requests, assume all obligations and liabilities of Tenant under the Lease, to the same extent as if Guarantor was a party to such document and there had been no such rejection or disaffirmance; and Guarantor will confirm such assumption, in writing, at the request of Landlord upon or after such rejection or disaffirmance. Guarantor, upon such assumption, shall have all rights of Tenant under the Lease to the fullest extent permitted by law.

2.5     If Landlord proposes to grant a mortgage on, or refinance any mortgage encumbering the Premises or any portion thereof, Guarantor shall cooperate in the process, and shall permit Landlord and the proposed mortgagee to meet with Guarantor or, if applicable, officers of Guarantor and to discuss Guarantor's business and finances. On request of Landlord, Guarantor agrees to provide any such prospective mortgagee the information to which Landlord is entitled hereunder, provided that if any such information is not publicly available, such nonpublic information shall be made available on a confidential basis. Guarantor agrees to execute, acknowledge and deliver documents requested by the prospective mortgagee (such as a consent to the financing, without encumbering Guarantor's or Tenant's assets, a consent to a collateral assignment of the Lease and of this Guaranty, estoppel certificate, and a subordination, non-disturbance and attornment agreement), customary for tenants and their guarantors to sign in connection with mortgage loans to landlords, so long as such documents are in form then customary among institutional lenders (provided the same do not materially and adversely change Tenant's rights or obligations under the Lease or materially and adversely change Guarantor's rights and obligations under this Guaranty).

3.     **GUARANTOR'S OBLIGATIONS UNCONDITIONAL**.

3.1     This Guaranty is an absolute and unconditional guaranty of payment and of performance, and not of collection, and shall be enforceable against Guarantor without the necessity of the commencement by Landlord of any Action against Tenant, and without the necessity of any notice of nonpayment, nonperformance or nonobservance, or any notice of acceptance of this Guaranty, or, subject to **Section 2.3**, of any other notice or demand to which Guarantor might otherwise be entitled, all of which Guarantor hereby expressly waives in advance. The obligations of Guarantor hereunder are independent of, and may exceed, the obligations of Tenant.

3.2     This Guaranty shall apply notwithstanding any extension or renewal of the Lease, or any holdover following the expiration or termination of the Lease Term or any renewal or extension of the Lease Term.

3.3     This Guaranty is a continuing guarantee and will remain in full force and effect notwithstanding, and the liability of Guarantor hereunder shall be absolute and unconditional irrespective of any or all of the following: (i) any renewals, extensions, modifications, alterations or amendments of the Lease (regardless of whether Guarantor consented to or had notice of same); (ii) any releases or discharges of Tenant or any Other Guarantor other than the full release and complete discharge of all of the Obligations; (iii) Landlord's failure or delay to assert any claim or demand or to enforce any of its rights against Tenant or any Other Guarantor; (iv) any extension of time that may be granted by Landlord to Tenant or any Other Guarantor; (v) any assignment or transfer of all of any part of

Tenant's interest under the Lease (whether by Tenant, by operation of law, or otherwise); (vi) any subletting, concession, franchising, licensing or permitting of the Premises or any portion thereof; (vii) any changed or different use of the Premises (or any portion thereof); (viii) any other dealings or matters occurring between Landlord and Tenant or any Other Guarantor; (ix) the taking by Landlord of any additional guarantees, or the receipt by Landlord of any collateral, from Tenant, any Other Guarantor or any other persons or entities; (x) the release by Landlord of any Other Guarantor; (xi) Landlord's release of any security provided under the Lease or any other guaranty; (xii) Landlord's failure to perfect any landlord's lien or other lien or security interest available under applicable federal, state or local laws, rules or regulations ("**Legal Requirements**"); (xiii) any assumption by any person of any or all of Tenant's obligations under the Lease or any Other Guarantor's obligations under any other guaranty, or Tenant's assignment of any or all of its rights and interests under the Lease, (xiv) the power or authority or lack thereof of Tenant to execute, acknowledge or deliver the Lease; (xv) the existence, non-existence or lapse at any time of Tenant as a legal entity or the existence, non-existence or termination of any corporate, ownership, business or other relationship between Tenant and Guarantor; (xvi) any sale or assignment by Landlord of any or all of this Guaranty, any other guaranty and the Lease (including any direct or collateral assignment by Landlord to any mortgagee); (xvii) the solvency or lack of solvency of Tenant or any Other Guarantor at any time or from time to time; or (xviii) any other cause, whether similar or dissimilar to any of the foregoing, that might constitute a legal or equitable discharge of Guarantor (whether or not Guarantor shall have knowledge or notice thereof) other than payment and performance in full of the Obligations. Without in any way limiting the generality of the foregoing, Guarantor specifically agrees that (A) if Tenant's obligations under the Lease are modified or amended with the express written consent of Landlord, this Guaranty shall extend to such obligations as so amended or modified without notice to, consideration to, or the consent of, Guarantor, and (B) this Guaranty shall be applicable to any obligations of Tenant arising in connection with a termination of the Lease, whether voluntary or otherwise. Guarantor hereby consents, prospectively, to Landlord's taking or entering into any or all of the foregoing actions or omissions. For purposes of this Guaranty and the obligations and liabilities of Guarantor hereunder, "**Tenant**" shall be deemed to include any and all concessionaires, licensees, franchisees, department operators, assignees, subtenants, permittees or others directly or indirectly operating or conducting a business in or from the Premises or any portion thereof, as fully as if any of the same were the named Tenant under the Lease.

3.4     Guarantor hereby expressly agrees that the validity of this Guaranty and the obligations of Guarantor hereunder shall in no way be terminated, affected, diminished or impaired by reason of the assertion or the failure to assert by Landlord against Tenant, of any of the rights or remedies reserved to Landlord pursuant to the provisions of the Lease or by relief of Tenant from any of Tenant's obligations under the Lease or otherwise by (i) the release or discharge of Tenant in any state or federal creditors' proceedings, receivership, bankruptcy or other proceeding; (ii) the impairment, limitation or modification of the liability of Tenant or the estate of Tenant in bankruptcy, or of any remedy for the enforcement of Tenant's liability under the Lease, resulting from the operation of any present or future provision of the United States Bankruptcy Code (11 U.S.C. § 101 et seq., as amended), or from other statute, or from the order of any court; or (iii) the rejection, disaffirmance or other termination of the Lease in any such proceeding. This Guaranty shall continue to be effective if at any time the payment of any amount due under the Lease or this Guaranty is rescinded or must otherwise be returned by

Landlord for any reason, including the insolvency, bankruptcy, liquidation or reorganization of Tenant, Guarantor or otherwise, all as though such payment had not been made, and, in such event, Guarantor shall pay to Landlord an amount equal to any such payment that has been rescinded or returned.

4. **WAIVERS OF GUARANTOR**.

4.1     Without limitation of the foregoing, Guarantor waives (i) notice of acceptance of this Guaranty, protest, demand and dishonor, presentment, and demands of any kind now or hereafter provided for by any statute or rule of law, (ii) notice of any actions taken by Landlord or Tenant under the Lease or any other agreement or instrument relating thereto, (iii) notice of any and all defaults by Tenant in the payment of Minimum Rent or other rent, charges or amounts, or of any other defaults by Tenant under the Lease, (iv) all other notices, demands and protests, and all other formalities of every kind in connection with the enforcement of the Obligations, omission of or delay in which, but for the provisions of this **Section 4**, might constitute grounds for relieving Guarantor of its obligations hereunder, (v) any requirement that Landlord protect, secure, perfect, insure or proceed against any security interest or lien, or any property subject thereto, or exhaust any right or take any action against Tenant, any Other Guarantor or any other person or entity (including any additional guarantor or Guarantor) or against any collateral, and (vi) the benefit of any statute of limitations affecting Guarantor's liability under this Guaranty.

4.2     GUARANTOR HEREBY WAIVES TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY ANY PERSON OR ENTITY WITH RESPECT TO ANY MATTER WHATSOEVER ARISING OUT OF OR IN ANY WAY CONNECTED WITH: THIS GUARANTY; THE LEASE; ANY LIABILITY OR OBLIGATION OF TENANT IN ANY MANNER RELATED TO THE PREMISES OR ANY PORTION THEREOF; ANY CLAIM OF INJURY OR DAMAGE IN ANY WAY RELATED TO THE LEASE AND/OR THE PREMISES (OR ANY PORTION THEREOF); ANY ACT OR OMISSION OF TENANT, ITS AGENTS, EMPLOYEES, CONTRACTORS, SUPPLIERS, SERVANTS, CUSTOMERS, CONCESSIONAIRES, FRANCHISEES, PERMITTEES OR LICENSEES; OR ANY ASPECT OF THE USE OR OCCUPANCY OF, OR THE CONDUCT OF BUSINESS IN, ON OR FROM THE PREMISES (OR ANY PORTION THEREOF). GUARANTOR SHALL NOT INTERPOSE ANY COUNTERCLAIM OR COUNTERCLAIMS OR CLAIMS FOR SET-OFF, RECOUPMENT OR DEDUCTION OF RENT IN ANY ACTION BROUGHT BY LANDLORD AGAINST GUARANTOR UNDER THIS GUARANTY. GUARANTOR SHALL NOT BE ENTITLED TO MAKE, AND HEREBY WAIVES, ANY AND ALL DEFENSES AGAINST ANY CLAIM ASSERTED BY LANDLORD OR IN ANY SUIT OR ACTION INSTITUTED BY LANDLORD TO ENFORCE THIS GUARANTY OR THE LEASE.  IN ADDITION, GUARANTOR HEREBY WAIVES, BOTH WITH RESPECT TO THE LEASE AND WITH RESPECT TO THIS GUARANTY, ANY AND ALL RIGHTS WHICH ARE WAIVED BY TENANT UNDER THE LEASE, IN THE SAME MANNER AS IF ALL SUCH WAIVERS WERE FULLY RESTATED HEREIN.  THE LIABILITY OF GUARANTOR UNDER THIS GUARANTY IS PRIMARY AND UNCONDITIONAL.

4.3     Guarantor expressly waives any and all rights to defenses arising by reason of (i) any "one-action" or "anti-deficiency" law or any other law that may prevent

Landlord from bringing any action, including a claim for deficiency, against Guarantor before or after Landlord's commencement or completion of any action Tenant or any Other Guarantor; (ii) ANY ELECTION OF REMEDIES BY LANDLORD (INCLUDING ANY TERMINATION OF THE LEASE) THAT DESTROYS OR OTHERWISE ADVERSELY AFFECTS GUARANTOR'S SUBROGATION RIGHTS OR GUARANTOR'S RIGHTS TO PROCEED AGAINST TENANT FOR REIMBURSEMENT; (iii) any disability, insolvency, bankruptcy, lack of authority or power, death, insanity, minority, dissolution, or other defense of Tenant, of any other guarantor (or any other Guarantor), or of any other person or entity, or by reason of the cessation of Tenant's liability from any cause whatsoever, other than full and final payment in legal tender and performance of the Obligations; (iv) any right to claim discharge of any or all of the Obligations on the basis of unjustified impairment of any collateral for the Obligations; (v) any change in the relationship between Guarantor and Tenant or any Other Guarantor or any termination of such relationship; (vi) any irregularity, defect or unauthorized action by any or all of Landlord, Tenant, any Other Guarantor or surety, or any of their respective officers, directors or other agents in executing and delivering any instrument or agreements relating to the Obligations or in carrying out or attempting to carry out the terms of any such agreements; (vii) any assignment, endorsement or transfer, in whole or in part, of the Obligations, whether made with or without notice to or consent of Guarantor; (viii) if the recovery from Tenant or any other Person (including any Other Guarantor) becomes barred by any statute of limitations or is otherwise prevented; (ix) the benefits of any and all statutes, laws, rules or regulations applicable in the State of Illinois which may require the prior or concurrent joinder of any other party to any action on this Guaranty; (x) any release or other reduction of the Obligations arising as a result of the expansion, release, substitution, deletion, addition, or replacement (whether or not in accordance with the terms of the Lease) of the Premises or any portion thereof; or (xi) any neglect, delay, omission, failure or refusal of Landlord to take or prosecute any action for the collection or enforcement of any of the Obligations or to foreclose or take or prosecute any action in connection with any lien or right of security (including perfection thereof) existing or to exist in connection with, or as security for, any of the Obligations, it being the intention hereof that Guarantor shall remain liable as a principal on the Obligations notwithstanding any act, omission or event that might, but for the provisions hereof, otherwise operate as a legal or equitable discharge of Guarantor. Guarantor hereby waives all defenses of a surety to which it may be entitled by statute or otherwise.

## 5. <u>SUBORDINATION; SUBROGATION</u>.

**5.1** Guarantor subordinates to the Obligations (i) any present and future debts and obligations of Tenant or any Other Guarantor to Guarantor (the "**Indebtedness**"), including: (A) salary, bonuses, and other payments pursuant to any employment arrangement; (B) fees, reimbursement of expenses and other payments pursuant to any independent contractor arrangement; (C) principal and interest pursuant to any Indebtedness; (D) distributions payable to any partners, members or shareholders of Guarantor or Affiliates of Guarantor; (E) lease payments pursuant to any leasing arrangement; (F) any management fees; and (G) all rights, liens and security interests of Guarantor, whether now or hereafter arising, in any assets of the Tenant or any Other Guarantor, and (ii) any liens or security interests securing payment of the Indebtedness. Guarantor shall have no right to possession of any assets of Tenant or any Other Guarantor or to foreclose upon any such asset, whether by judicial action or otherwise, unless and until the Obligations have been paid and performed in full. Guarantor agrees that Landlord

shall be subrogated to Guarantor with respect to Guarantor's claims against Tenant or any Other Guarantor and Guarantor's rights, liens and security interest, if any, in any of Tenant's or any Other Guarantor's assets and proceeds thereof until all of the Obligations have been paid and performed in full.

        5.2     After the occurrence of an Event of Default and until such Event of Default is cured or after the commencement of any bankruptcy or insolvency proceeding by or against Tenant and until such proceeding is dismissed, Guarantor shall not: (i) make any distributions, dividends or other similar payments to any partners, parent entities, or Affiliates of Guarantor (other than to Tenant); or (ii) ask for, sue for, demand, take or receive any payment, by setoff or in any other manner, including the receipt of a negotiable instrument, for all or any part of the Indebtedness owed by Tenant, or any successor or assign of Tenant, including a receiver, trustee or debtor in possession (the term "**Tenant**" shall include any such successor or assign of Tenant) until the Obligations have been paid in full; however, if Guarantor receives such a payment, Guarantor shall immediately deliver the payment to Landlord for credit against the then outstanding balance of the Obligations, whether matured or unmatured. Notwithstanding anything in this **Section 5** to the contrary, (a) prior to an Event of Default that has occurred and is continuing, management fees and reimbursements provided for in that certain Management Services Agreement between Tenant and Rice Management, Inc., an Affiliate of Guarantor, may be paid by Tenant as required thereunder, and (b) after an Event of Default has occurred and is outstanding, Guarantor may make cash contributions to Tenant.

        5.3     Guarantor shall not be subrogated, and hereby waives and disclaims any claim or right against Tenant by way of subrogation or otherwise, to any of the rights of Landlord under the Lease or otherwise, or in the Premises (or any portion thereof), which may arise by any of the provisions of this Guaranty or by reason of the performance by Guarantor of any of its Obligations hereunder. Guarantor shall look solely to Tenant for any recoupment of any payments made or costs or expenses incurred by Guarantor pursuant to this Guaranty. If any amount shall be paid to Guarantor on account of such subrogation rights at any time when all of the Obligations shall not have been paid and performed in full, Guarantor shall immediately deliver the payment to Landlord for credit against the then outstanding balance of the Obligations, whether matured or unmatured.

       6.     <u>**REPRESENTATIONS AND WARRANTIES OF GUARANTOR**</u>. Guarantor represents and warrants that:

        6.1     This Guaranty is valid and binding upon and enforceable against Guarantor without the requirement of further action or condition.

        6.2     The execution, delivery and performance by Guarantor of this Guaranty does not and will not (i) contravene any applicable Legal Requirements, the organizational documents of Guarantor, if applicable, any order, writ, injunction, decree applicable to Guarantor, or any contractual restriction binding on or affecting Guarantor or any of its properties or assets, or (ii) result in or require the creation of any lien, security interest or other charge or encumbrance upon or with respect to any of its properties or assets.

**6.3**     No approval, consent, exemption, authorization or other action by, or notice to, or filing with, any governmental authority is necessary or required in connection with the execution, delivery or performance by, or enforcement against, Guarantor of this Guaranty or any other instrument or agreement required hereunder.

**6.4**     There is no action, suit or proceeding pending or threatened against or otherwise affecting Guarantor before any court or other governmental authority or any arbitrator that may materially adversely affect Guarantor's ability to perform its obligations under this Guaranty.

**6.5**     Tenant is directly or indirectly owned and controlled by Guarantor.

**6.6**     Guarantor has derived or expects to derive financial and other advantages and benefits directly or indirectly, from the making of the Lease and the payment and performance of the Obligations.  Guarantor hereby acknowledges that Landlord will be relying upon Guarantor's guarantee, representations, warranties and covenants contained herein.

**6.7**     All reports, statements (financial or otherwise), certificates and other data furnished by or on behalf of Guarantor to Landlord in connection with this Guaranty or the Lease are:  true and correct, in all material respects, as of the applicable date or period provided therein; do not omit to state any material fact or circumstance necessary to make the statements contained therein not misleading; and fairly represent the financial condition of Guarantor as of the respective date thereof; and no material adverse change has occurred in the financial condition of Guarantor since the date of the most recent of such financial statements.

**7.**     **NOTICES**.   Any consents, notices, demands, requests, approvals or other communications given under this Guaranty shall be in writing and shall be given as provided in the Lease, as follows or to such other addresses as either Landlord or Guarantor may designate by notice given to the other in accordance with the provisions of this **Section 7**:

If to Guarantor:

KBWB Operations, LLC
1120 Alps Road
Wayne, New Jersey 07470
c/o Kevin P. Breslin

If to Landlord:

c/o Ventas, Inc.
10350 Ormsby Park Place, Suite 300
Louisville, Kentucky  40223
Attention:      Lease Administration
Telephone:     (502) 357-9000
Fax No.:         (502) 357-9001

With a copy to:

c/o Ventas, Inc.
353 N. Clark Street, Suite 3300
Chicago, Illinois 60654
Attention:  Legal Department
Telephone: (312) 660-3800
Fax No.: (312) 660-3850

8. **CONSENT TO JURISDICTION**.  Guarantor hereby (a) consents and submits to the jurisdiction of the courts of the State of Illinois and the federal courts sitting in the State of Illinois with respect to any dispute arising, directly or indirectly, out of this Guaranty, (b) waives any objections which the undersigned may have to the laying of venue in any such suit, action or proceeding in either such court, (c) agrees to join Landlord in any petition for removal to either such court, and (d) irrevocably designates and appoints Tenant as its authorized agent to accept and acknowledge on its behalf service of process with respect to any disputes arising, directly or indirectly, out of this Guaranty.  The undersigned hereby acknowledges and agrees that Landlord may obtain personal jurisdiction and perfect service of process through Tenant as the undersigned agent, or by any other means now or hereafter permitted by applicable law.  Nothing above shall limit Landlord's choice of forum for purposes of enforcing this Guaranty.

9. **CERTAIN ADDITIONAL COVENANTS**.

9.1 **Financial Deliveries**.  Guarantor shall deliver the following information to Landlord:

9.1.1 As soon as available, and in any event within 120 days after the close of each calendar year, in hard copy and electronic format, in form satisfactory to Landlord, and presented on a consolidated as well as a property-by-property basis, complete financial statements prepared for such year with respect to Guarantor and, if applicable, its Consolidated Subsidiaries (as defined below), including a balance sheet as of the end of such year, together with related statements of operations, cash flows and changes in equity for such calendar year, prepared in accordance with generally accepted accounting principals consistently applied ("**GAAP**").  Such financial statements shall be audited by Pricewaterhouse Coopers, Deloitte, Ernst & Young, KPMG, Clifton Larson Allen or such other nationally-recognized accounting firm acceptable to Landlord in its reasonable discretion.  Together with Guarantor's financial statements, Guarantor shall furnish to Landlord a certificate, executed by Guarantor or, if applicable, Guarantor's CEO (or equivalent) (a) certifying as of the date thereof whether to the best of such Guarantor's knowledge there exists an event or circumstance which constitutes a default or Event of Default under the Lease and if such default or Event of Default exists, the nature thereof, the period of time it has existed and the action then being taken to remedy the same, and (b) certifying that the information contained in such financial statements is true and correct in all material respects and complies with the provisions of this **Section 9**.  As used herein, "**Consolidated Subsidiary**" shall mean, with respect to Guarantor, any subsidiary or other entity the accounts of which would be consolidated with those of Guarantor in its consolidated financial statements if such statements were prepared as of such date.

9.1.2 As soon as available and in any event within 45 days after the end of each calendar quarter, in form satisfactory to Landlord, (a) an unaudited consolidated balance sheet of Guarantor and, if applicable, its Consolidated Subsidiaries, together with the related consolidated and consolidating statements of operations for such quarter and for the portion of the calendar year ended at such quarter and a consolidated statement of cash flows for the portion of the year at the end of such quarter, all of which shall be prepared on a comparative basis with the same periods of the previous year (to the extent available) in accordance with GAAP, and (b) Guarantor's calculation of the Required Annual Capital Expenditures Amount as of the end of that quarter.  Together with Guarantor's interim financial statements, Guarantor shall furnish

to Landlord a certificate, executed by Guarantor or, if applicable, Guarantor's CEO (or equivalent) (1) certifying as of the date thereof whether to the best of such Guarantor's knowledge there exists an event or circumstance which constitutes a default or Event of Default under the Lease and if such default or Event of Default exists, the nature thereof, the period of time it has existed and the action then being taken to remedy the same, (2) and certifying that the information contained in such financial statements is true and correct in all material respects.

**9.1.3** As soon as available and in any event within 30 days after the end of each calendar month (and, with respect to the calendar month immediately preceding the month hereof, 30 days following the end of such calendar month), an unaudited consolidated balance sheet of Guarantor and, if applicable, its Consolidated Subsidiaries, together with the related consolidated and consolidating statements of operations for such month and for the portion of the calendar year ended at such month and a consolidated statement of cash flows for the portion of the calendar year ended at the end of such month, all of which shall be prepared on a comparative basis with the same periods of the previous year (to the extent available) and in accordance with GAAP.

**9.1.4** Guarantor shall deliver to Landlord its annual federal tax returns within 30 days after the filing thereof with the Internal Revenue Service.

Upon the delivery of any financial information by or on behalf of Guarantor pursuant to this **Section 9** from time to time during the Lease Term, Guarantor shall be deemed (unless Guarantor specifically states otherwise in writing) to automatically represent and warrant to Landlord that the financial information delivered to Landlord is true, accurate and complete, presents fairly the results of operations of Guarantor for the respective periods covered thereby, reflects accurately the books and records of account of Guarantor as of such dates and for such periods, and that there has been no adverse change in the financial condition of Guarantor since the date of the then applicable financial information.

**9.2** **Disclosure**. Guarantor agrees that any financial statements of Guarantor and, if applicable, its Consolidated Subsidiaries, required to be delivered to Landlord may, without the prior consent of, or notice to, Guarantor, be included and disclosed, to the extent required by applicable law, regulation or stock exchange rule, in offering memoranda or prospectuses, or similar publications in connection with syndications, private placements or public offerings of Landlord's (or the entities directly or indirectly controlling Landlord) securities or interests, and in any registration statement, report or other document permitted or required to be filed under applicable federal and state laws, including those of any successor to Landlord. Guarantor agrees to provide such other reasonable financial and other information necessary to facilitate a private placement or a public offering or to satisfy the SEC or regulatory disclosure requirements. Guarantor agrees to use commercially reasonable efforts to cause its independent auditors, at Landlord's cost, to consent, in a timely manner, to the inclusion of their audit report issued with respect to such financial statements in any registration statement or other filing under federal and state laws and to provide the underwriters participating in any offering of securities or interests of Landlord (or the entities directly or indirectly controlling Landlord) with a standard accountant's "comfort" letter with regard to the financial information of Guarantor and, if applicable, its Consolidated Subsidiaries included or incorporated by reference into any prospectus or other offering document.

**9.3** **Review Right**. Landlord shall have the right, from time to time during normal business hours after three Business Days prior oral or written notice to Guarantor, itself or through any attorney, accountant or other agent or representative retained by Landlord ("**Landlord's Representatives**"), to examine and audit all financial and other records and pertinent corporate documents of Guarantor at the office of Guarantor or such other Person that maintains such records and documents and to make such copies or extracts thereof as Landlord or Landlord's Representatives may request and Guarantor hereby agrees to reasonably cooperate with any such examination or audit; provided, however, the cost of such examination or audit shall be borne by Landlord, except during the continuation of an Event of Default, in which case, the cost of any such examination or audit shall be borne by Guarantor and shall be payable within 15 days of Landlord's written demand therefor.

**9.4** **Assignment; Sale of Assets; Change in Control**. Without the prior consent of Landlord, which consent may be withheld or granted in Landlord's sole discretion, Guarantor shall not assign (whether directly or indirectly), in whole or in part, this Guaranty or any obligation hereunder or, through one or more step transactions or tiered transactions, do, or permit to be done, any activity, transaction, assignment, subletting or transfer prohibited under **Section 16** of the Lease.

**9.5** **Payment Method; Default Interest**. Guarantor shall make any payments due hereunder in immediately available funds by wire transfer to Landlord's bank account as notified by Landlord, unless Landlord agrees to another method of payment of immediately available funds. If Guarantor does not pay an amount due hereunder on its due date, Guarantor shall pay, on demand, interest at the Agreed Rate on the amount due for a period ending on the full payment of such amount, including the day of repayment, whether before or after any judgment or award, to the extent permitted under applicable law.

**10.** **FINANCIAL COVENANTS**. Until the payment and performance in full of the Obligations, Guarantor shall maintain, at a minimum, the Tangible Net Worth and Fixed Charge Coverage Ratio (each as defined on **Exhibit A** attached hereto) set forth on **Schedule 1** attached hereto. The Tangible Net Worth and Fixed Charge Coverage Ratio of Guarantor shall be measured as of the last day of each calendar quarter, beginning with the first quarter of the 2015 calendar year, and evidence of the compliance by Guarantor of this **Section 10**, which evidence shall be certified as true and correct by Guarantor or, if applicable, Guarantor's CEO (or equivalent), shall be submitted to Landlord concurrently with the delivery of the quarterly financial statements required under **Section 9.1.2** above. Guarantor hereby represents and warrants to Landlord that as of the date hereof, Guarantor's Tangible Net Worth equals or exceeds the Tangible Net Worth set forth on **Schedule 1**. If Guarantor changes the method by which it reports the value of its assets or consolidated liabilities, then Landlord and Guarantor may modify the definition of Tangible Net Worth in **Exhibit A** and the Tangible Net Worth threshold set forth on **Schedule 1** by mutual written agreement.

**11.** **MISCELLANEOUS**.

**11.1** Guarantor further agrees that Landlord may, without notice, assign this Guaranty in whole or in part. If Landlord disposes of its interest in the Lease, "**Landlord**", as used in this Guaranty, shall mean Landlord's successors and assigns.

**11.2**   Guarantor promises to pay all costs of collection or enforcement incurred by Landlord in exercising any remedies provided for in the Lease or this Guaranty whether at law or in equity.  If any legal action or proceeding is commenced to interpret or enforce the terms of, or obligations arising out of, this Guaranty, or to recover damages for the breach thereof, the party prevailing in any such action or proceedings shall be entitled to recover from the non-prevailing party all attorneys' fees and reasonable costs and expenses incurred by the prevailing party.  As used herein, "attorneys' fees" shall mean the fees and expenses of counsel to the parties hereto, which may include printing, photocopying, duplicating and other expenses, air freight charges, and fees billed for law clerks, paralegals, librarians and others not admitted to the bar but performing services under the supervision of an attorney.  The term "attorneys' fees" shall also include all such fees and expenses incurred with respect to appeals, arbitrations and bankruptcy proceedings.

**11.3**   Guarantor shall, from time to time within 10 days after receipt of Landlord's request, execute, acknowledge and deliver to Landlord a statement certifying that this Guaranty is unmodified and in full force and effect (or if there have been modifications, that the same is in full force and effect as modified and stating such modifications), and setting forth such other information as Landlord may reasonably request.  Such certificate may be relied upon by any prospective purchaser, lessor or lender of all or a portion of the Premises (or any portion thereof).

**11.4**   If any portion of this Guaranty shall be deemed invalid, unenforceable or illegal for any reason, such invalidity, unenforceability or illegality shall not affect the balance of this Guaranty, which shall remain in full force and effect to the maximum permitted extent.

**11.5**   The provisions, covenants and guaranties of this Guaranty shall be binding upon Guarantor and its heirs, successors, legal representatives and assigns, and shall inure to the benefit of Landlord and its successors and assigns, and shall not be deemed waived or modified unless such waiver or modification is specifically set forth in writing, executed by Landlord or its successors and assigns, and delivered to Guarantor.

**11.6**   Whenever the words "include", "includes", or "including" are used in this Guaranty, they shall be deemed to be followed by the words "without limitation", and, whenever the circumstances or the context requires, the singular shall be construed as the plural, the masculine shall be construed as the feminine and/or the neuter and vice versa.  This Guaranty shall be interpreted and enforced without the aid of any canon, custom or rule of law requiring or suggesting construction against the party drafting or causing the drafting of the provision in question.

**11.7**   Each of the rights and remedies herein provided are cumulative and not exclusive of any rights or remedies provided by law or in the Lease or this Guaranty.

**11.8**   The provisions of this Guaranty shall be governed by and interpreted solely in accordance with the internal laws of the State of Illinois, without giving effect to the principles of conflicts of law.

**11.9**     The execution of this Guaranty prior to execution of the Amendment shall not invalidate this Guaranty or lessen the Obligations of Guarantor hereunder.

**11.10**     This Guaranty may be executed and delivered electronically (including via email or facsimile transmission), which shall be deemed to be the execution and delivery of an original.

**11.11**     The Recitals set forth above are hereby incorporated by this reference and made a part of this Guaranty.  Guarantor hereby represents and warrants that the Recitals are true and correct.

**11.12**     Guarantor hereby acknowledges and agrees to be bound by the restrictive covenants set forth in **Section 7.3** of the Lease.

**11.13**     This Guaranty contains the entire agreement of Landlord and Guarantor as to the subject matter hereof and supersedes all prior written or oral agreements or understandings and contemporaneous oral agreements or understandings.

[SIGNATURE PAGE FOLLOWS]

**IN WITNESS WHEREOF,** Guarantor has executed this Guaranty as of the day and year first above written.

GUARANTOR:

**KBWB OPERATIONS, LLC,**
a New Jersey limited liability company

By: _____

Name: ____Kevin Breslin_____

Its:_____Managing Member_____

*Signature Page to Guaranty*

<u>**EXHIBIT A**</u>

**CERTAIN DEFINED TERMS**

As used in **Section 10** of this Guaranty, the following terms shall have the meanings set forth below:

"**Acquisition**" means, by any Person, the purchase or acquisition by such Person of any Capital Stock in another Person or any asset of another Person, whether or not involving a merger or consolidation with such other Person.

"**Annualized**" means, with respect to an amount, (i) if relating to a period that is less than full year, (a) such amount, divided by (b) the number of days in in such period, multiplied by (c) 365, or (ii) if not relating to a period that is less than full year, such amount.

"**Capital Lease**" means, as applied to any Person, any lease of any property (whether real, personal or mixed) by that Person as lessee which, in accordance with GAAP and in the reasonable judgment of such Person, is required to be accounted for as a capital lease on the balance sheet of that Person.

"**Capital Stock**" shall mean, with respect to any entity, any capital stock (including preferred stock), shares, interests, participation or other ownership interests (however designated) of such entity and any rights (other than debt securities convertible into or exchangeable for capital stock), warrants or options to purchase any thereof; provided, however, that leases of real property that provide for contingent rent based on the financial performance of the tenant shall not be deemed to be Capital Stock.

"**Consolidated Adjusted EBITDAR**" means, for Guarantor and, if applicable, its Consolidated Subsidiaries determined on a consolidated basis, for a particular period, (i) Annualized Consolidated EBITDAR for such period, minus (ii) the Required Annual Capital Expenditures Amount at the end of such period.

"**Consolidated Cash Interest Expense**" means the portion of Consolidated Interest Expense paid or payable during the period used to calculate such Consolidated Interest Expense.

"**Consolidated EBITDAR**" means, for any period, for Guarantor and, if applicable, its Consolidated Subsidiaries determined on a consolidated basis, Consolidated Net Income for such period, <u>plus</u> without duplication, to the extent deducted in determining Consolidated Net Income, the sum for such period of (i) amortization and depreciation expense, (ii) provision for income taxes (including provision for deferred taxes not payable currently), (iii) Consolidated Interest Expense, (iv) Rent Expense, and (v) non-cash charges as are reasonably acceptable to Landlord; <u>but</u>, <u>excluding</u>, for purposes hereof to the extent included in determining Consolidated Net Income for such period (a) extraordinary gains and losses and related tax effects thereon, (b) other non-cash gains and losses thereon as are reasonably acceptable to Landlord, and (c) the amount of interest income, all as determined for such period in conformity with GAAP.

"**Consolidated Fixed Charges**" means, for Guarantor and, if applicable, its Consolidated Subsidiaries determined on a consolidated basis, for a particular period, the following determined

A-1

in accordance with GAAP: the sum of the principal amount of long term Debt and Capital Leases paid or payable (but without double counting) during such period plus Consolidated Cash Interest Expense and Rent Expense for such period.

"**Consolidated Interest Expense**" means, for a given period, all interest expense for Guarantor and, if applicable, its Consolidated Subsidiaries during such period determined on a consolidated basis for such period taken as a single accounting period in accordance with GAAP, including amortization of debt discount and premium, the interest component under Capital Leases (and also including, to the extent required under GAAP, the implied interest component under a securitization) and all payments due under Interest Rate Protection Agreements by Guarantor and its Consolidated Subsidiaries determined on a consolidated basis (net of payments to such parties by any counter party thereunder), but excluding the amortization of any deferred financing fees.

"**Consolidated Net Income**" means, for any given period, the net income or loss of Guarantor and, if applicable, its Consolidated Subsidiaries during such period (including net income or net loss attributable to non-controlling interests) determined on a consolidated basis for such period taken as a single accounting period in accordance with GAAP; provided that there shall be excluded from such determination of net income or loss (i) adjustments for straight-line rent accounting, (ii) the income or loss of any Person (other than the Consolidated Subsidiaries) in which Guarantor or any of its Consolidated Subsidiaries has an equity investment or comparable interest, except to the extent of the amount of dividends or other distributions actually received by Guarantor or any Consolidated Subsidiary in cash on a non-contingent basis, without any obligation to return such dividend or distribution by the Guarantor or any Consolidated Subsidiary, (iii) income or loss of a Person accrued prior to the date it becomes a Consolidated Subsidiary or is merged or consolidated with or such Person's assets are acquired by Guarantor or any of its Consolidated Subsidiaries and (iv) any after tax gains or losses attributable to sales of non-current assets out of the ordinary course of business and write-downs of non-current assets in anticipation of losses to the extent they have decreased net income.

"**Consolidated Subsidiary**" shall mean at any date, any subsidiary or other entity the accounts of which would be consolidated with those of Guarantor in its consolidated financial statements if such statements were prepared as of such date.

"**Debt**" of Guarantor or any of its Consolidated Subsidiaries shall mean, without duplication, any indebtedness of Guarantor or any of its Consolidated Subsidiaries, whether or not contingent, in respect of: (i) borrowed money as evidenced by bonds, notes, debentures or similar instruments; (ii) indebtedness for borrowed money secured by any encumbrance existing on property owned by Guarantor or its Consolidated Subsidiaries, to the extent of the lesser of (x) the amount of indebtedness so secured or (y) the fair market value of the property subject to such encumbrance; (iii) all reimbursement obligations in connection with any letters of credit or amounts representing the balance deferred and unpaid of the purchase price of any property or services, except any such balance that constitutes an accrued expense, trade payable, conditional sale obligation or obligation under any title retention agreement; (iv) all net obligations of such Person under any Interest Rate Protection Agreement valued in accordance with GAAP; (v) all obligations in respect of any preferred equity to the extent payments are being made thereon;

(vi) indebtedness of any partnership or joint venture or other similar entity in which such Person is a general partner or joint venturer and, as such, has personal liability for such obligations, but only if and to the extent there is recourse to such Person for payment thereof; (vii) any obligations of Guarantor and its Consolidated Subsidiaries with respect to redemption, repayment or other repurchase of any Equity Interest or the principal amount of any subordinated Debt (regardless of whether interest or principal is then-currently payable with respect thereto); (viii) any lease of property by Guarantor or any of its Consolidated Subsidiaries as lessee which is reflected as a capital lease obligation on the consolidated balance sheet of Guarantor or its Consolidated Subsidiaries; to the extent, in the case of items of indebtedness under clauses (i) through (viii) above, that any such items would appear as a liability on Guarantor's or its Consolidated Subsidiaries' consolidated balance sheet in accordance with GAAP; or (ix) the liquidation preference of any Equity Interest of Guarantor or any shares of preferred stock of any of its Consolidated Subsidiaries to the extent payments are being made thereon.

Debt also includes, to the extent not otherwise included, any obligations by Guarantor and its Consolidated Subsidiaries to be liable for, or to pay, as obligor, guarantor or otherwise (other than for purposes of collection in the ordinary course of business), Debt of another Person including Debt secured by a lien on any assets of such Person, whether or not such Person shall have assumed such indebtedness (provided, that if such Person has not assumed such indebtedness of such other Person, then the amount of indebtedness of such Person shall be equal to the lesser of the amount of the indebtedness of such other Person or the fair market value of the assets of such Person which secure such other indebtedness); it being understood that Debt shall be deemed to be incurred by Guarantor or any of its Consolidated Subsidiaries whenever Guarantor or such Consolidated Subsidiary shall create, assume, guarantee or otherwise become liable in respect thereof; provided, however that a Person shall not be deemed to have incurred Debt (or be liable with respect to such Debt) by virtue of a securitization.

Debt shall not include (a) Debt arising from agreements of Guarantor or any of its Consolidated Subsidiaries providing for indemnification, adjustment or holdback of purchase price or similar obligations, in each case, incurred or assumed in connection with the acquisition or disposition of any business, assets or a subsidiary, other than guarantees of Debt incurred by any Person acquiring all or any portion of such business, assets or subsidiary for the purpose of financing the acquisition, (b) contingent obligations under performance bonds, performance guarantees, surety bonds, appeal bonds or similar obligations incurred in the ordinary course of business and consistent with past practices, or (c) endorsements of instruments for deposit or collection in the ordinary course of business, unless in each case such obligations must be shown as a liability in accordance with GAAP. In the case of Debt as of any date issued with original issue discount, the amount of such Debt shall be the accreted value thereof as of such date.

"**Equity Interest**" means Capital Stock and all warrants, options or other rights to acquire Capital Stock (but excluding any debt security that is convertible into, or exchangeable for, Capital Stock).

"**Fixed Charge Coverage Ratio**" means, for Guarantor and, if applicable, its Consolidated Subsidiaries determined on a consolidated basis for the trailing 12 consecutive month period ending as of any date of determination, the ratio of (i) the Consolidated Adjusted EBITDAR for such period to (ii) the sum of the Consolidated Fixed Charges for such period.

For purposes of computing the Fixed Charge Coverage Ratio, Consolidated Adjusted EBITDAR and Consolidated Fixed Charges shall be normalized on a Pro Forma Basis for any acquisitions and/or divestitures occurring during each fiscal quarter.

"**Interest Rate Protection Agreements**" means any interest rate swap agreement, interest rate cap agreement, synthetic cap, collar or floor or other financial agreement or arrangement designed to protect Guarantor or any Consolidated Subsidiary against fluctuations in interest rates or to reduce the effect of any such fluctuations.

"**Pro Forma Basis**" means, for purposes of determining compliance with any financial covenant hereunder, that the subject transaction shall be deemed to have occurred as of the first day of the applicable period ending on the last day of the applicable period for which annual or quarterly financial statements shall have been delivered in accordance with the provisions of this Guaranty. Further, for purposes of making calculations on a "**Pro Forma Basis**" hereunder, (i) in the case of an asset disposition, (A) income statement items (whether positive or negative) attributable to the property, entities or business units that are the subject of such asset disposition shall be excluded to the extent relating to any period prior to the actual date of the subject transaction, and (B) Debt paid or retired in connection with the subject transaction shall be deemed to have been paid and retired as of the first day of the applicable period; and (ii) in the case of an Acquisition, (A) income statement items (whether positive or negative) attributable to the property, entities or business units that are the subject of such Acquisition shall be included to the extent relating to any period prior to the actual date of the subject transaction, and (B) Debt incurred in connection with the subject transaction shall be deemed to have been incurred as of the first day of the applicable period (and interest expense shall be imputed for the applicable period utilizing the actual interest rates thereunder or, if actual rates are not ascertainable, assuming prevailing interest rates).

"**Rent Expense**" means rent expense computed under and in accordance with GAAP, exclusive of any non-cash adjustment under GAAP for the straight lining of rent.

"**Required Annual Capital Expenditures Amount**" means the sum of (a) the aggregate annual amount that Guarantor and all Consolidated Subsidiaries are contractually required to spend on capital expenditures (or similar upgrade expenditures, including Upgrade Expenditures as defined in the Lease) at skilled nursing facilities and assisted living facilities operated by Guarantor and its Consolidated Subsidiaries plus (b) the aggregate annual amount that Guarantor and all Consolidated Subsidiaries are contractually required to deposit with any owner of or lender on a skilled nursing facility or assisted living facility operated by Guarantor or any of its Consolidated Subsidiaries for capital expenditures (or similar upgrade expenditures, including Upgrade Expenditures as defined in the Lease) at those facilities. If any agreement obligating Tenant to spend or deposit any amounts described in this definition requires Tenant to deposit those amounts and then seek reimbursement from the reserved amounts after spending related amounts, then the "Required Annual Capital Expenditures Amount" shall only include the greater of the amount that Tenant is obligated to spend on an annual basis under that agreement or the amount that Tenant is obligated to reserve on an annual basis under that agreement.

"**Tangible Net Worth**" means, as of any date of determination, for Guarantor and, if applicable, its Consolidated Subsidiaries determined on a consolidated basis, an amount equal to

A-4

Guarantor's assets as of such date, *minus* (i) the total consolidated liabilities of Guarantor as of such date and (ii) the total intangible assets of Guarantor as of such date, each as determined in accordance with GAAP.

## <u>SCHEDULE 1</u>

**Financial Covenants**

**Tangible Net Worth:  -$75,000,000**

**Fixed Charge Coverage Ratio:  1.3 to 1.0**

Exhibit B-1

## GUARANTY OF LEASE

THIS **GUARANTY OF LEASE** (this "**Guaranty**") is made as of December 31, 2015, by **VINCENT TUFARIELLO**, **KEVIN P. BRESLIN**, **WILLIAM G. BURRIS, JR.**, **WILLIAM G. BURRIS III**, **MARY THERESA KHAWLY**, and **ELIA ZOIS**, each an individual (individually and collectively, "**Guarantor**"), to each of the entities identified on **Schedule 1** as a Landlord (individually and collectively, "**Landlord**").

## R E C I T A L S

A.     Landlord has been requested by the entities identified on **Schedule 1** attached hereto as Tenant (individually and collectively, "**Tenant**") to enter into a Master Lease dated as of the date hereof (the "**Lease**"), whereby Landlord would lease to Tenant, and Tenant would lease from Landlord, certain premises located in Wisconsin, as more particularly described in the Lease (the "**Premises**").

B.     Guarantor owns a membership interest in the limited liability company that owns a controlling interest in the sole member of the sole member of Tenant, and will derive substantial economic benefit from the execution and delivery of the Lease.

C.     Guarantor acknowledges that Landlord would not enter into the Lease unless this Guaranty accompanied the execution and delivery of the Lease.

D.     Guarantor hereby acknowledges receipt of a copy of the Lease.

**NOW, THEREFORE**, in consideration of the execution and delivery of the Lease and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Guarantor covenants and agrees as follows:

**1.**     **DEFINITIONS**.  Defined terms used in this Guaranty and not otherwise defined herein have the meanings assigned to them in the Lease.

**2.**     **COVENANTS OF GUARANTOR**.

**2.1**     Guarantor absolutely, unconditionally and irrevocably guarantees, as a primary obligor and not merely as a surety: (i) the full and prompt payment of all Rent and all other sums and charges of every type and nature payable by Tenant under the Lease (including Minimum Rent and Additional Rent), whether due by acceleration or otherwise, including costs and expenses of collection, and (ii) the full, timely and complete performance of all covenants, terms, conditions, obligations, indemnities and agreements to be performed by Tenant under the Lease, including any indemnities or other obligations of Tenant that survive the expiration or earlier termination of the Lease (all of the obligations described in clauses (i) and (ii), are collectively referred to herein as the "**Obligations**").

**2.2**     Guarantor agrees with Landlord that (i) any action, suit or proceeding of any kind or nature whatsoever (an "**Action**") commenced by Landlord against Tenant, Guarantor or any other guarantor of the Lease ("**Other Guarantor**") to collect Minimum Rent and any other rent, sums and charges due under the Lease for any month or months shall not prejudice in

01240174.4

any way Landlord's rights to collect any such amounts due for any subsequent month or months throughout the Term in any subsequent Action against Tenant, Guarantor or any Other Guarantor, (ii) Landlord may, at its option, without prior notice or demand, join Guarantor in any Action against Tenant or any Other Guarantor in connection with or based upon either or both of the Lease and any of the Obligations, (iii) Landlord may seek and obtain recovery against Guarantor in an Action against Tenant or any Other Guarantor, or in any independent Action against Guarantor without Landlord first asserting, prosecuting, or exhausting any remedy or claim against Tenant or any Other Guarantor or against any security of Tenant held by Landlord under the Lease, (iv) Landlord may (but shall not be required to) exercise its rights against each of Tenant, Guarantor or any Other Guarantor concurrently, and (v) Guarantor will be conclusively bound by a judgment entered in any Action in favor of Landlord against Tenant or any Other Guarantor, as if Guarantor were a party to such Action, irrespective of whether or not Guarantor is entered as a party or participates in such Action.

2.3     Any default or failure by Guarantor to perform any of its Obligations under this Guaranty shall be deemed an immediate Event of Default by Tenant under the Lease. Landlord's enforcement of its rights and remedies under this Guaranty against Guarantor with respect to any breach of or default under the Lease shall be subject to any applicable cure periods set forth in the Lease, and Guarantor shall have the benefit of any such cure periods (which Guarantor cure periods shall run concurrently with, and not in addition to, any Tenant cure periods).

2.4     Guarantor agrees that, in the event of the rejection or disaffirmance of the Lease by Tenant or Tenant's trustee in bankruptcy, pursuant to bankruptcy law or any other law affecting creditors' rights, Guarantor will, if Landlord so requests, assume all obligations and liabilities of Tenant under the Lease, to the same extent as if Guarantor was a party to such document and there had been no such rejection or disaffirmance; and Guarantor will confirm such assumption, in writing, at the request of Landlord upon or after such rejection or disaffirmance. Guarantor, upon such assumption, shall have all rights of Tenant under the Lease to the fullest extent permitted by law.

2.5     If Landlord proposes to grant a mortgage on, or refinance any mortgage encumbering the Premises or any portion thereof, Guarantor shall cooperate in the process, and shall permit Landlord and the proposed mortgagee to meet with Guarantor or, if applicable, officers of Guarantor and to discuss Guarantor's business and finances. On request of Landlord, Guarantor agrees to provide any such prospective mortgagee the information to which Landlord is entitled hereunder, provided that if any such information is not publicly available, such nonpublic information shall be made available on a confidential basis. Guarantor agrees to execute, acknowledge and deliver documents requested by the prospective mortgagee (such as a consent to the financing, without encumbering Guarantor's or Tenant's assets, a consent to a collateral assignment of the Lease and of this Guaranty, estoppel certificate, and a subordination, non-disturbance and attornment agreement), customary for tenants and their guarantors to sign in connection with mortgage loans to landlords, so long as such documents are in form then customary among institutional lenders (provided the same do not materially and adversely change Tenant's rights or obligations under the Lease or materially and adversely change Guarantor's rights and obligations under this Guaranty).

3. **GUARANTOR'S OBLIGATIONS UNCONDITIONAL**.

3.1    This Guaranty is an absolute and unconditional guaranty of payment and of performance, and not of collection, and shall be enforceable against Guarantor without the necessity of the commencement by Landlord of any Action against Tenant, and without the necessity of any notice of nonpayment, nonperformance or nonobservance, or any notice of acceptance of this Guaranty, or, subject to **Section 2.3**, of any other notice or demand to which Guarantor might otherwise be entitled, all of which Guarantor hereby expressly waives in advance. The obligations of Guarantor hereunder are independent of, and may exceed, the obligations of Tenant.

3.2    This Guaranty shall apply notwithstanding any extension or renewal of the Lease, or any holdover following the expiration or termination of the Lease Term or any renewal or extension of the Lease Term.

3.3    This Guaranty is a continuing guarantee and will remain in full force and effect notwithstanding, and the liability of Guarantor hereunder shall be absolute and unconditional irrespective of any or all of the following: (i) any renewals, extensions, modifications, alterations or amendments of the Lease (regardless of whether Guarantor consented to or had notice of same); (ii) any releases or discharges of Tenant or any Other Guarantor other than the full release and complete discharge of all of the Obligations; (iii) Landlord's failure or delay to assert any claim or demand or to enforce any of its rights against Tenant or any Other Guarantor; (iv) any extension of time that may be granted by Landlord to Tenant or any Other Guarantor; (v) any assignment or transfer of all or any part of Tenant's interest under the Lease (whether by Tenant, by operation of law, or otherwise); (vi) any subletting, concession, franchising, licensing or permitting of the Premises or any portion thereof; (vii) any changed or different use of the Premises (or any portion thereof); (viii) any other dealings or matters occurring between Landlord and Tenant or any Other Guarantor; (ix) the taking by Landlord of any additional guarantees, or the receipt by Landlord of any collateral, from Tenant, any Other Guarantor or any other persons or entities; (x) the release by Landlord of any Other Guarantor; (xi) Landlord's release of any security provided under the Lease or any other guaranty; (xii) Landlord's failure to perfect any landlord's lien or other lien or security interest available under applicable Legal Requirements; (xiii) any assumption by any person of any or all of Tenant's obligations under the Lease or any Other Guarantor's obligations under any other guaranty, or Tenant's assignment of any or all of its rights and interests under the Lease, (xiv) the power or authority or lack thereof of Tenant to execute, acknowledge or deliver the Lease; (xv) the existence, non-existence or lapse at any time of Tenant as a legal entity or the existence, non-existence or termination of any corporate, ownership, business or other relationship between Tenant and Guarantor; (xvi) any sale or assignment by Landlord of any or all of this Guaranty, any other guaranty and the Lease (including any direct or collateral assignment by Landlord to any mortgagee); (xvii) the solvency or lack of solvency of Tenant or any Other Guarantor at any time or from time to time; or (xviii) any other cause, whether similar or dissimilar to any of the foregoing, that might constitute a legal or equitable discharge of Guarantor (whether or not Guarantor shall have knowledge or notice thereof) other than payment and performance in full of the Obligations. Without in any way limiting the generality of the foregoing, Guarantor specifically agrees that (A) if Tenant's obligations under the Lease are modified or amended with the express written consent of Landlord, this Guaranty shall extend to

such obligations as so amended or modified without notice to, consideration to, or the consent of, Guarantor, and (B) this Guaranty shall be applicable to any obligations of Tenant arising in connection with a termination of the Lease, whether voluntary or otherwise. Guarantor hereby consents, prospectively, to Landlord's taking or entering into any or all of the foregoing actions or omissions. For purposes of this Guaranty and the obligations and liabilities of Guarantor hereunder, "**Tenant**" shall be deemed to include any and all concessionaires, licensees, franchisees, department operators, assignees, subtenants, permittees or others directly or indirectly operating or conducting a business in or from the Premises or any portion thereof, as fully as if any of the same were the named Tenant under the Lease.

3.4     Guarantor hereby expressly agrees that the validity of this Guaranty and the obligations of Guarantor hereunder shall in no way be terminated, affected, diminished or impaired by reason of the assertion or the failure to assert by Landlord against Tenant, of any of the rights or remedies reserved to Landlord pursuant to the provisions of the Lease or by relief of Tenant from any of Tenant's obligations under the Lease or otherwise by (i) the release or discharge of Tenant in any state or federal creditors' proceedings, receivership, bankruptcy or other proceeding; (ii) the impairment, limitation or modification of the liability of Tenant or the estate of Tenant in bankruptcy, or of any remedy for the enforcement of Tenant's liability under the Lease, resulting from the operation of any present or future provision of the United States Bankruptcy Code (11 U.S.C. § 101 et seq., as amended), or from other statute, or from the order of any court; or (iii) the rejection, disaffirmance or other termination of the Lease in any such proceeding. This Guaranty shall continue to be effective if at any time the payment of any amount due under the Lease or this Guaranty is rescinded or must otherwise be returned by Landlord for any reason, including the insolvency, bankruptcy, liquidation or reorganization of Tenant, Guarantor or otherwise, all as though such payment had not been made, and, in such event, Guarantor shall pay to Landlord an amount equal to any such payment that has been rescinded or returned.

4.     **WAIVERS OF GUARANTOR**.

4.1     Without limitation of the foregoing, Guarantor waives (i) notice of acceptance of this Guaranty, protest, demand and dishonor, presentment, and demands of any kind now or hereafter provided for by any statute or rule of law, (ii) notice of any actions taken by Landlord or Tenant under the Lease or any other agreement or instrument relating thereto, (iii) notice of any and all defaults by Tenant in the payment of Minimum Rent or other rent, charges or amounts, or of any other defaults by Tenant under the Lease, (iv) all other notices, demands and protests, and all other formalities of every kind in connection with the enforcement of the Obligations, omission of or delay in which, but for the provisions of this **Section 4**, might constitute grounds for relieving Guarantor of its obligations hereunder, (v) any requirement that Landlord protect, secure, perfect, insure or proceed against any security interest or lien, or any property subject thereto, or exhaust any right or take any action against Tenant, any Other Guarantor or any other person or entity (including any additional guarantor or Guarantor) or against any collateral, and (vi) the benefit of any statute of limitations affecting Guarantor's liability under this Guaranty.

4.2     GUARANTOR HEREBY WAIVES TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY ANY PERSON OR

ENTITY WITH RESPECT TO ANY MATTER WHATSOEVER ARISING OUT OF OR IN ANY WAY CONNECTED WITH: THIS GUARANTY; THE LEASE; ANY LIABILITY OR OBLIGATION OF TENANT IN ANY MANNER RELATED TO THE PREMISES OR ANY PORTION THEREOF; ANY CLAIM OF INJURY OR DAMAGE IN ANY WAY RELATED TO THE LEASE AND/OR THE PREMISES (OR ANY PORTION THEREOF); ANY ACT OR OMISSION OF TENANT, ITS AGENTS, EMPLOYEES, CONTRACTORS, SUPPLIERS, SERVANTS, CUSTOMERS, CONCESSIONAIRES, FRANCHISEES, PERMITTEES OR LICENSEES; OR ANY ASPECT OF THE USE OR OCCUPANCY OF, OR THE CONDUCT OF BUSINESS IN, ON OR FROM THE PREMISES (OR ANY PORTION THEREOF). GUARANTOR SHALL NOT INTERPOSE ANY COUNTERCLAIM OR COUNTERCLAIMS OR CLAIMS FOR SET-OFF, RECOUPMENT OR DEDUCTION OF RENT IN ANY ACTION BROUGHT BY LANDLORD AGAINST GUARANTOR UNDER THIS GUARANTY. GUARANTOR SHALL NOT BE ENTITLED TO MAKE, AND HEREBY WAIVES, ANY AND ALL DEFENSES AGAINST ANY CLAIM ASSERTED BY LANDLORD OR IN ANY SUIT OR ACTION INSTITUTED BY LANDLORD TO ENFORCE THIS GUARANTY OR THE LEASE. IN ADDITION, GUARANTOR HEREBY WAIVES, BOTH WITH RESPECT TO THE LEASE AND WITH RESPECT TO THIS GUARANTY, ANY AND ALL RIGHTS WHICH ARE WAIVED BY TENANT UNDER THE LEASE, IN THE SAME MANNER AS IF ALL SUCH WAIVERS WERE FULLY RESTATED HEREIN. THE LIABILITY OF GUARANTOR UNDER THIS GUARANTY IS PRIMARY AND UNCONDITIONAL.

    **4.3**    Guarantor expressly waives any and all rights to defenses arising by reason of (i) any "one-action" or "anti-deficiency" law or any other law that may prevent Landlord from bringing any action, including a claim for deficiency, against Guarantor before or after Landlord's commencement or completion of any action against Tenant or any Other Guarantor; (ii) ANY ELECTION OF REMEDIES BY LANDLORD (INCLUDING ANY TERMINATION OF THE LEASE) THAT DESTROYS OR OTHERWISE ADVERSELY AFFECTS GUARANTOR'S SUBROGATION RIGHTS OR GUARANTOR'S RIGHTS TO PROCEED AGAINST TENANT FOR REIMBURSEMENT; (iii) any disability, insolvency, bankruptcy, lack of authority or power, death, insanity, minority, dissolution, or other defense of Tenant, of any other guarantor (or any other Guarantor), or of any other person or entity, or by reason of the cessation of Tenant's liability from any cause whatsoever, other than full and final payment in legal tender and performance of the Obligations; (iv) any right to claim discharge of any or all of the Obligations on the basis of unjustified impairment of any collateral for the Obligations; (v) any change in the relationship between Guarantor and Tenant or any Other Guarantor or any termination of such relationship; (vi) any irregularity, defect or unauthorized action by any or all of Landlord, Tenant, any Other Guarantor or surety, or any of their respective officers, directors or other agents in executing and delivering any instrument or agreements relating to the Obligations or in carrying out or attempting to carry out the terms of any such agreements; (vii) any assignment, endorsement or transfer, in whole or in part, of the Obligations, whether made with or without notice to or consent of Guarantor; (viii) if the recovery from Tenant or any other Person (including any Other Guarantor) becomes barred by any statute of limitations or is otherwise prevented; (ix) the benefits of any and all statutes, laws, rules or regulations applicable in the State of Illinois which may require the prior or concurrent joinder of any other party to any action on this Guaranty; (x) any release or other reduction of the Obligations arising as a result of the expansion, release, substitution, deletion, addition, or replacement (whether or not in accordance with the terms of the Lease) of the Premises or any

portion thereof; or (xi) any neglect, delay, omission, failure or refusal of Landlord to take or prosecute any action for the collection or enforcement of any of the Obligations or to foreclose or take or prosecute any action in connection with any lien or right of security (including perfection thereof) existing or to exist in connection with, or as security for, any of the Obligations, it being the intention hereof that Guarantor shall remain liable as a principal on the Obligations notwithstanding any act, omission or event that might, but for the provisions hereof, otherwise operate as a legal or equitable discharge of Guarantor. Guarantor hereby waives all defenses of a surety to which it may be entitled by statute or otherwise.

5. **SUBORDINATION; SUBROGATION**.

      5.1    Guarantor subordinates to the Obligations (i) any present and future debts and obligations of Tenant or any Other Guarantor to Guarantor (the "**Indebtedness**"), including: (A) salary, bonuses, and other payments pursuant to any employment arrangement; (B) fees, reimbursement of expenses and other payments pursuant to any independent contractor arrangement; (C) principal and interest pursuant to any Indebtedness; (D) distributions payable to any partners, members or shareholders of Guarantor or Affiliates of Guarantor; (E) lease payments pursuant to any leasing arrangement; (F) any management fees; and (G) all rights, liens and security interests of Guarantor, whether now or hereafter arising, in any assets of the Tenant or any Other Guarantor, and (ii) any liens or security interests securing payment of the Indebtedness. Guarantor shall have no right to possession of any assets of Tenant or any Other Guarantor or to foreclose upon any such asset, whether by judicial action or otherwise, unless and until the Obligations have been paid and performed in full. Guarantor agrees that Landlord shall be subrogated to Guarantor with respect to Guarantor's claims against Tenant or any Other Guarantor and Guarantor's rights, liens and security interest, if any, in any of Tenant's or any Other Guarantor's assets and proceeds thereof until all of the Obligations have been paid and performed in full.

      5.2    After the occurrence of an Event of Default and until such Event of Default is cured or after the commencement of any bankruptcy or insolvency proceeding by or against Tenant and until such proceeding is dismissed, Guarantor shall not: (i) make any distributions, dividends or other similar payments to any partners, parent entities, or Affiliates of Guarantor (other than to Tenant); or (ii) ask for, sue for, demand, take or receive any payment, by setoff or in any other manner, including the receipt of a negotiable instrument, for all or any part of the Indebtedness owed by Tenant, or any successor or assign of Tenant, including a receiver, trustee or debtor in possession (the term "**Tenant**" shall include any such successor or assign of Tenant) until the Obligations have been paid in full; however, if Guarantor receives such a payment, Guarantor shall immediately deliver the payment to Landlord for credit against the then outstanding balance of the Obligations, whether matured or unmatured. Notwithstanding anything in this **Section 5** to the contrary, (a) prior to an Event of Default that has occurred and is continuing, management fees and reimbursements provided for in that certain Management Services Agreement between Tenant and Atrium Consulting and Management Services – Midwest LLC, a Wisconsin limited liability company and an Affiliate of Guarantor, may be paid by Tenant as required thereunder, and (b) after an Event of Default has occurred and is outstanding, Guarantor may make cash contributions to Tenant.

**5.3**     Guarantor shall not be subrogated, and hereby waives and disclaims any claim or right against Tenant by way of subrogation or otherwise, to any of the rights of Landlord under the Lease or otherwise, or in the Premises (or any portion thereof), which may arise by any of the provisions of this Guaranty or by reason of the performance by Guarantor of any of its Obligations hereunder.  Guarantor shall look solely to Tenant for any recoupment of any payments made or costs or expenses incurred by Guarantor pursuant to this Guaranty.  If any amount shall be paid to Guarantor on account of such subrogation rights at any time when all of the Obligations shall not have been paid and performed in full, Guarantor shall immediately deliver the payment to Landlord for credit against the then outstanding balance of the Obligations, whether matured or unmatured.

**6.**     **REPRESENTATIONS AND WARRANTIES OF GUARANTOR**.  Guarantor represents and warrants that:

**6.1**     This Guaranty is valid and binding upon and enforceable against Guarantor without the requirement of further action or condition.

**6.2**     The execution, delivery and performance by Guarantor of this Guaranty does not and will not (i) contravene any applicable Legal Requirements, the organizational documents of Guarantor, if applicable, any order, writ, injunction, decree applicable to Guarantor, or any contractual restriction binding on or affecting Guarantor or any of its properties or assets, or (ii) result in or require the creation of any lien, security interest or other charge or encumbrance upon or with respect to any of its properties or assets.

**6.3**     No approval, consent, exemption, authorization or other action by, or notice to, or filing with, any governmental authority is necessary or required in connection with the execution, delivery or performance by, or enforcement against, Guarantor of this Guaranty or any other instrument or agreement required hereunder.

**6.4**     There is no action, suit or proceeding pending or threatened against or otherwise affecting Guarantor before any court or other governmental authority or any arbitrator that may materially adversely affect Guarantor's ability to perform its obligations under this Guaranty.

**6.5**     Tenant is directly or indirectly owned and controlled by Guarantor.

**6.6**     Guarantor has derived or expects to derive financial and other advantages and benefits directly or indirectly, from the making of the Lease and the payment and performance of the Obligations.  Guarantor hereby acknowledges that Landlord will be relying upon Guarantor's guarantee, representations, warranties and covenants contained herein.

**6.7**     All reports, statements (financial or otherwise), certificates and other data furnished by or on behalf of Guarantor to Landlord in connection with this Guaranty or the Lease are:  true and correct, in all material respects, as of the applicable date or period provided therein; do not omit to state any material fact or circumstance necessary to make the statements contained therein not misleading; and fairly represent the financial condition of Guarantor as of the respective date thereof; and no material adverse change has occurred in the financial condition of Guarantor since the date of the most recent of such financial statements.

01240174.4                                     7

7. **NOTICES**. Any consents, notices, demands, requests, approvals or other communications given under this Guaranty shall be in writing and shall be given as provided in the Lease, as follows or to such other addresses as either Landlord or Guarantor may designate by notice given to the other in accordance with the provisions of this **Section 7**:

If to Guarantor:

Kevin Breslin
1120 Alps Road
Wayne, New Jersey 07470

William G. Burris, Jr.
744 Jeffrey Road
Moorestown, New Jersey 08057

William G. Burris, III
741 Cox Road
Moorestown, New Jersey 08057

Mary Theresa Khawly
888 S. Ocean Blvd
Palm Beach, Florida 33480

Elia Zois
712 Morven Terrace
Sea Girt, New Jersey 08750

Vincent Tufariello
30 Old Farm Road
Basking Ridge, New Jersey 07920

If to Landlord:

c/o Care Capital Properties, Inc.
353 North Clark Street, Suite 2900
Chicago, Illinois  60654
Attention:     Lease Administration
Telephone:    (312) 881-4700
Fax No.:        (312) 881-4799

With a copy to:

c/o Care Capital Properties, Inc.
353 N. Clark Street, Suite 2900
Chicago, Illinois  60654
Attention:     Legal Department
Telephone:    (312) 881-4700
Fax No.:        (312) 881-4798

With a copy to:

Fultz Maddox Dickens PLC
101 S. Fifth Street, Suite 2700
Louisville, Kentucky  40202
Attention:     Everett Nelson, Esq.
Telephone:    (502) 588-2000
Fax No.:        (502) 588-2020

8. **CONSENT TO JURISDICTION**. Guarantor hereby (a) consents and submits to the jurisdiction of the courts of the State of Illinois and the federal courts sitting in the State of Illinois with respect to any dispute arising, directly or indirectly, out of this Guaranty, (b) waives any objections which the undersigned may have to the laying of venue in any such suit, action or proceeding in either such court, (c) agrees to join Landlord in any petition for removal to either such court, and (d) irrevocably designates and appoints Tenant as its authorized agent to accept and acknowledge on its behalf service of process with respect to any disputes arising, directly or indirectly, out of this Guaranty. The undersigned hereby acknowledges and agrees that Landlord may obtain personal jurisdiction and perfect service of process through Tenant as the undersigned agent, or by any other means now or hereafter permitted by applicable law. Nothing above shall limit Landlord's choice of forum for purposes of enforcing this Guaranty.

9. **CERTAIN ADDITIONAL COVENANTS**.

9.1 **Financial Deliveries**. Guarantor shall deliver the following information to Landlord:

**9.1.1**      As soon as available and in any event within 45 days after the end of each calendar year, in form satisfactory to Landlord, a personal financial statement for each Guarantor.  Together with Guarantor's financial statements, Guarantor shall furnish to Landlord a certificate, executed by each Guarantor, (a) certifying as of the date thereof whether to the best of such Guarantor's knowledge there exists an event or circumstance which constitutes a default or Event of Default under the Lease and if such default or Event of Default exists, the nature thereof, the period of time it has existed and the action then being taken to remedy the same, and (b) certifying that the information contained in such Guarantor's financial statement is true and correct in all material respects.

**9.1.2**      Each Guarantor shall deliver to Landlord its annual federal tax returns within 30 days after the filing thereof with the Internal Revenue Service.

Upon the delivery of any financial information by or on behalf of Guarantor pursuant to this **Section 9** from time to time during the Lease Term, Guarantor shall be deemed (unless Guarantor specifically states otherwise in writing) to automatically represent and warrant to Landlord that the financial information delivered to Landlord is true, accurate and complete, presents fairly the financial condition of Guarantor as of the date thereof, and that there has been no adverse change in the financial condition of Guarantor since the date of the then applicable financial information.

**9.2**      **Disclosure**.  Guarantor agrees that any financial statements of Guarantor required to be delivered to Landlord may, without the prior consent of, or notice to, Guarantor, be included and disclosed, to the extent required by applicable law, regulation or stock exchange rule, in offering memoranda or prospectuses, or similar publications in connection with syndications, private placements or public offerings of Landlord's (or the entities directly or indirectly controlling Landlord) securities or interests, and in any registration statement, report or other document permitted or required to be filed under applicable federal and state laws, including those of any successor to Landlord.  Guarantor agrees to provide such other reasonable financial and other information necessary to facilitate a private placement or a public offering or to satisfy the SEC or regulatory disclosure requirements.

**9.3**      **Review Right**.  Landlord shall have the right, from time to time during normal business hours after three Business Days prior oral or written notice to Guarantor, itself or through any attorney, accountant or other agent or representative retained by Landlord ("**Landlord's Representatives**"), to examine and audit all financial and other records of Guarantor at the office of Guarantor or such other Person that maintains such records and documents and to make such copies or extracts thereof as Landlord or Landlord's Representatives may request and Guarantor hereby agrees to reasonably cooperate with any such examination or audit; provided, however, the cost of such examination or audit shall be borne by Landlord, except during the continuation of an Event of Default, in which case, the cost of any such examination or audit shall be borne by Guarantor and shall be payable within 15 days of Landlord's written demand therefor.

**9.4**      **Assignment; Sale of Assets; Change in Control**.  Without the prior consent of Landlord, which consent may be withheld or granted in Landlord's sole discretion, Guarantor shall not assign (whether directly or indirectly), in whole or in part, this Guaranty or

any obligation hereunder or, through one or more step transactions or tiered transactions, do, or permit to be done, any activity, transaction or Transfer prohibited under **Section 11** of the Lease.

           9.5    **Payment Method; Default Interest**.  Guarantor shall make any payments due hereunder in immediately available funds by wire transfer to Landlord's bank account as notified by Landlord, unless Landlord agrees to another method of payment of immediately available funds. If Guarantor does not pay an amount due hereunder on its due date, Guarantor shall pay, on demand, interest at the Agreed Rate on the amount due for a period ending on the full payment of such amount, including the day of repayment, whether before or after any judgment or award, to the extent permitted under applicable law.

     10.    **MISCELLANEOUS**.

           10.1    Guarantor further agrees that Landlord may, without notice, assign this Guaranty in whole or in part.  If Landlord disposes of its interest in the Lease, "**Landlord**", as used in this Guaranty, shall mean Landlord's successors and assigns.

           10.2    Guarantor promises to pay all costs of collection or enforcement incurred by Landlord in exercising any remedies provided for in the Lease or this Guaranty whether at law or in equity.  If any legal action or proceeding is commenced to interpret or enforce the terms of, or obligations arising out of, this Guaranty, or to recover damages for the breach thereof, the party prevailing in any such action or proceedings shall be entitled to recover from the non-prevailing party all attorneys' fees and reasonable costs and expenses incurred by the prevailing party.  As used herein, "attorneys' fees" shall mean the fees and expenses of counsel to the parties hereto, which may include printing, photocopying, duplicating and other expenses, air freight charges, and fees billed for law clerks, paralegals, librarians and others not admitted to the bar but performing services under the supervision of an attorney.  The term "attorneys' fees" shall also include all such fees and expenses incurred with respect to appeals, arbitrations and bankruptcy proceedings.

           10.3    Guarantor shall, from time to time within 10 days after receipt of Landlord's request, execute, acknowledge and deliver to Landlord a statement certifying that this Guaranty is unmodified and in full force and effect (or if there have been modifications, that the same is in full force and effect as modified and stating such modifications), and setting forth such other information as Landlord may reasonably request.  Such certificate may be relied upon by any prospective purchaser, lessor or lender of all or a portion of the Premises (or any portion thereof).

           10.4    If any portion of this Guaranty shall be deemed invalid, unenforceable or illegal for any reason, such invalidity, unenforceability or illegality shall not affect the balance of this Guaranty, which shall remain in full force and effect to the maximum permitted extent.

           10.5    The provisions, covenants and guaranties of this Guaranty shall be binding upon Guarantor and its heirs, successors, legal representatives and assigns, and shall inure to the benefit of Landlord and its successors and assigns, and shall not be deemed waived or modified unless such waiver or modification is specifically set forth in writing, executed by Landlord or its successors and assigns, and delivered to Guarantor.

**10.6**     Whenever the words "include", "includes", or "including" are used in this Guaranty, they shall be deemed to be followed by the words "without limitation", and, whenever the circumstances or the context requires, the singular shall be construed as the plural, the masculine shall be construed as the feminine and/or the neuter and vice versa.  This Guaranty shall be interpreted and enforced without the aid of any canon, custom or rule of law requiring or suggesting construction against the party drafting or causing the drafting of the provision in question.

**10.7**     Each of the rights and remedies herein provided are cumulative and not exclusive of any rights or remedies provided by law or in the Lease or this Guaranty.

**10.8**     The provisions of this Guaranty shall be governed by and interpreted solely in accordance with the internal laws of the State of Illinois, without giving effect to the principles of conflicts of law.

**10.9**     The execution of this Guaranty prior to execution of the Lease shall not invalidate this Guaranty or lessen the Obligations of Guarantor hereunder.

**10.10**   This Guaranty may be executed in multiple counterparts, each of which shall be an original, but all of which shall constitute but one instrument.  The signature page of any counterpart may be detached therefrom and reattached to any other counterpart to physically form a single document.  This Guaranty may be executed and delivered electronically (including via email or facsimile transmission), which shall be deemed to be the execution and delivery of an original.

**10.11**   The Recitals set forth above are hereby incorporated by this reference and made a part of this Guaranty.  Guarantor hereby represents and warrants that the Recitals are true and correct.

**10.12**   Guarantor hereby acknowledges and agrees to be bound by the restrictive covenants set forth in **Exhibit G** to the Lease.

**10.13**   Each entity or individual comprising Guarantor shall be jointly and severally liable to Landlord for the faithful performance of this Guaranty.

**10.14**   This Guaranty contains the entire agreement of Landlord and Guarantor as to the subject matter hereof and supersedes all prior written or oral agreements or understandings and contemporaneous oral agreements or understandings.

[SIGNATURE PAGE FOLLOWS]

**IN WITNESS WHEREOF,** Guarantor has executed this Guaranty as of the day and year first above written.

GUARANTOR:

_____

**VINCENT TUFARIELLO**, an individual

_____

**KEVIN P. BRESLIN**, an individual

_____

**WILLIAM G. BURRIS, JR.**, an individual

_____

**WILLIAM G. BURRIS III**, an individual

_____

**MARY THERESA KHAWLY**, an individual

_____

**ELIA ZOIS**, an individual

**IN WITNESS WHEREOF,** Guarantor has executed this Guaranty as of the day and year first above written.

GUARANTOR:

_____
**VINCENT TUFARIELLO**, an individual

_____
**KEVIN P. BRESLIN**, an individual

_____
**WILLIAM G. BURRIS, JR.**, an individual

_____
**WILLIAM G. BURRIS III**, an individual

_____
**MARY THERESA KHAWLY**, an individual

_____
**ELIA ZOIS**, an individual

**IN WITNESS WHEREOF,** Guarantor has executed this Guaranty as of the day and year first above written.

GUARANTOR:

_____
**VINCENT TUFARIELLO**, an individual

_____
**KEVIN P. BRESLIN**, an individual

_____
**WILLIAM G. BURRIS, JR.**, an individual

_____
**WILLIAM G. BURRIS III**, an individual

_____
**MARY THERESA KHAWLY**, an individual

_____
**ELIA ZOIS**, an individual

*Signature Page to Guaranty*

**IN WITNESS WHEREOF,** Guarantor has executed this Guaranty as of the day and year first above written.

GUARANTOR:

_____

**VINCENT TUFARIELLO**, an individual

_____

**KEVIN P. BRESLIN**, an individual

_____

**WILLIAM G. BURRIS, JR.,** an individual

_____

**WILLIAM G. BURRIS III**, an individual

_____

**MARY THERESA KHAWLY**, an individual

_____

**ELIA ZOIS**, an individual

01240174.4

*Signature Page to Guaranty*

**IN WITNESS WHEREOF,** Guarantor has executed this Guaranty as of the day and year first above written.

GUARANTOR:

_____

**VINCENT TUFARIELLO**, an individual

_____

**KEVIN P. BRESLIN**, an individual

_____

**WILLIAM G. BURRIS, JR.**, an individual

_____

**WILLIAM G. BURRIS III**, an individual

_____

**MARY THERESA KHAWLY**, an individual

_____

**ELIA ZOIS**, an individual

01240174.4

*Signature Page to Guaranty*

**IN WITNESS WHEREOF,** Guarantor has executed this Guaranty as of the day and year first above written.

GUARANTOR:

_____

**VINCENT TUFARIELLO**, an individual

_____

**KEVIN P. BRESLIN**, an individual

_____

**WILLIAM G. BURRIS, JR.**, an individual

_____

**WILLIAM G. BURRIS III**, an individual

_____

**MARY THERESA KHAWLY**, an individual

_____

**ELIA ZOIS**, an individual

*Signature Page to Guaranty*

Scanned by CamScanner

**SCHEDULE 1**

**LANDLORDS AND TENANTS**

| Landlord | Tenant |
|---|---|
| CCP Colony Oaks 0767 LLC, a Delaware limited liability company | 601 Briarcliff Drive Operating Company, LLC, a Wisconsin limited liability company |
| CCP Vallhaven 0770 LLC, a Delaware limited liability company | 125 Byrd Avenue Operating Company, LLC, a Wisconsin limited liability company |
| CCP Kennedy Park 0771 LLC, a Delaware limited liability company | 6001 Alderson Street Operating Company, LLC, a Wisconsin limited liability company |

Exhibit B-2

## GUARANTY OF LEASE

THIS **GUARANTY OF LEASE** (this "**Guaranty**") is made as of December 31, 2015, by **KBWB OPERATIONS, LLC**, a New Jersey limited liability company ("**Guarantor**"), to each of the entities identified on **Schedule 1** as a Landlord (individually and collectively, "**Landlord**").

## R E C I T A L S

A.      Landlord has been requested by the entities identified on **Schedule 1** attached hereto as Tenant (individually and collectively, "**Tenant**") to enter into a Master Lease dated as of the date hereof (the "**Lease**"), whereby Landlord would lease to Tenant, and Tenant would lease from Landlord, certain premises located in Wisconsin, as more particularly described in the Lease (the "**Premises**").

B.      Guarantor owns a controlling interest in the sole member of the sole member of Tenant, and will derive substantial economic benefit from the execution and delivery of the Lease.

C.      Guarantor acknowledges that Landlord would not enter into the Lease unless this Guaranty accompanied the execution and delivery of the Lease.

D.      Guarantor hereby acknowledges receipt of a copy of the Lease.

**NOW, THEREFORE**, in consideration of the execution and delivery of the Lease and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Guarantor covenants and agrees as follows:

1.      **DEFINITIONS**.  Defined terms used in this Guaranty and not otherwise defined herein have the meanings assigned to them in the Lease.

2.      **COVENANTS OF GUARANTOR**.

2.1      Guarantor absolutely, unconditionally and irrevocably guarantees, as a primary obligor and not merely as a surety: (i) the full and prompt payment of all Rent and all other sums and charges of every type and nature payable by Tenant under the Lease (including Minimum Rent and Additional Rent), whether due by acceleration or otherwise, including costs and expenses of collection, and (ii) the full, timely and complete performance of all covenants, terms, conditions, obligations, indemnities and agreements to be performed by Tenant under the Lease, including any indemnities or other obligations of Tenant that survive the expiration or earlier termination of the Lease (all of the obligations described in clauses (i) and (ii), are collectively referred to herein as the "**Obligations**").  Guarantor acknowledges that the Obligations include Tenant's obligations under **Section 20** of the Lease, including the payment of the Option Purchase Price and the consummation of the purchase of the Premises after an exercise of the Purchase Option or the Put Option.

2.2      Guarantor agrees with Landlord that (i) any action, suit or proceeding of any kind or nature whatsoever (an "**Action**") commenced by Landlord against Tenant, Guarantor

or any other guarantor of the Lease ("**Other Guarantor**") to collect Minimum Rent and any other rent, sums and charges due under the Lease for any month or months shall not prejudice in any way Landlord's rights to collect any such amounts due for any subsequent month or months throughout the Term in any subsequent Action against Tenant, Guarantor or any Other Guarantor, (ii) Landlord may, at its option, without prior notice or demand, join Guarantor in any Action against Tenant or any Other Guarantor in connection with or based upon either or both of the Lease and any of the Obligations, (iii) Landlord may seek and obtain recovery against Guarantor in an Action against Tenant or any Other Guarantor, or in any independent Action against Guarantor without Landlord first asserting, prosecuting, or exhausting any remedy or claim against Tenant or any Other Guarantor or against any security of Tenant held by Landlord under the Lease, (iv) Landlord may (but shall not be required to) exercise its rights against each of Tenant, Guarantor or any Other Guarantor concurrently, and (v) Guarantor will be conclusively bound by a judgment entered in any Action in favor of Landlord against Tenant or any Other Guarantor, as if Guarantor were a party to such Action, irrespective of whether or not Guarantor is entered as a party or participates in such Action.

2.3     Any default or failure by Guarantor to perform any of its Obligations under this Guaranty shall be deemed an immediate Event of Default by Tenant under the Lease. Landlord's enforcement of its rights and remedies under this Guaranty against Guarantor with respect to any breach of or default under the Lease shall be subject to any applicable cure periods set forth in the Lease, and Guarantor shall have the benefit of any such cure periods (which Guarantor cure periods shall run concurrently with, and not in addition to, any Tenant cure periods).

2.4     Guarantor agrees that, in the event of the rejection or disaffirmance of the Lease by Tenant or Tenant's trustee in bankruptcy, pursuant to bankruptcy law or any other law affecting creditors' rights, Guarantor will, if Landlord so requests, assume all obligations and liabilities of Tenant under the Lease, to the same extent as if Guarantor was a party to such document and there had been no such rejection or disaffirmance; and Guarantor will confirm such assumption, in writing, at the request of Landlord upon or after such rejection or disaffirmance. Guarantor, upon such assumption, shall have all rights of Tenant under the Lease to the fullest extent permitted by law.

2.5     If Landlord proposes to grant a mortgage on, or refinance any mortgage encumbering the Premises or any portion thereof, Guarantor shall cooperate in the process, and shall permit Landlord and the proposed mortgagee to meet with Guarantor or, if applicable, officers of Guarantor and to discuss Guarantor's business and finances. On request of Landlord, Guarantor agrees to provide any such prospective mortgagee the information to which Landlord is entitled hereunder, provided that if any such information is not publicly available, such nonpublic information shall be made available on a confidential basis. Guarantor agrees to execute, acknowledge and deliver documents requested by the prospective mortgagee (such as a consent to the financing, without encumbering Guarantor's or Tenant's assets, a consent to a collateral assignment of the Lease and of this Guaranty, estoppel certificate, and a subordination, non-disturbance and attornment agreement), customary for tenants and their guarantors to sign in connection with mortgage loans to landlords, so long as such documents are in form then customary among institutional lenders (provided the same do not materially and adversely

change Tenant's rights or obligations under the Lease or materially and adversely change Guarantor's rights and obligations under this Guaranty).

3. **GUARANTOR'S OBLIGATIONS UNCONDITIONAL**.

       3.1    This Guaranty is an absolute and unconditional guaranty of payment and of performance, and not of collection, and shall be enforceable against Guarantor without the necessity of the commencement by Landlord of any Action against Tenant, and without the necessity of any notice of nonpayment, nonperformance or nonobservance, or any notice of acceptance of this Guaranty, or, subject to **Section 2.3**, of any other notice or demand to which Guarantor might otherwise be entitled, all of which Guarantor hereby expressly waives in advance. The obligations of Guarantor hereunder are independent of, and may exceed, the obligations of Tenant.

       3.2    This Guaranty shall apply notwithstanding any extension or renewal of the Lease, or any holdover following the expiration or termination of the Lease Term or any renewal or extension of the Lease Term.

       3.3    This Guaranty is a continuing guarantee and will remain in full force and effect notwithstanding, and the liability of Guarantor hereunder shall be absolute and unconditional irrespective of any or all of the following: (i) any renewals, extensions, modifications, alterations or amendments of the Lease (regardless of whether Guarantor consented to or had notice of same); (ii) any releases or discharges of Tenant or any Other Guarantor other than the full release and complete discharge of all of the Obligations; (iii) Landlord's failure or delay to assert any claim or demand or to enforce any of its rights against Tenant or any Other Guarantor; (iv) any extension of time that may be granted by Landlord to Tenant or any Other Guarantor; (v) any assignment or transfer of all or any part of Tenant's interest under the Lease (whether by Tenant, by operation of law, or otherwise); (vi) any subletting, concession, franchising, licensing or permitting of the Premises or any portion thereof; (vii) any changed or different use of the Premises (or any portion thereof); (viii) any other dealings or matters occurring between Landlord and Tenant or any Other Guarantor; (ix) the taking by Landlord of any additional guarantees, or the receipt by Landlord of any collateral, from Tenant, any Other Guarantor or any other persons or entities; (x) the release by Landlord of any Other Guarantor; (xi) Landlord's release of any security provided under the Lease or any other guaranty; (xii) Landlord's failure to perfect any landlord's lien or other lien or security interest available under applicable Legal Requirements; (xiii) any assumption by any person of any or all of Tenant's obligations under the Lease or any Other Guarantor's obligations under any other guaranty, or Tenant's assignment of any or all of its rights and interests under the Lease, (xiv) the power or authority or lack thereof of Tenant to execute, acknowledge or deliver the Lease; (xv) the existence, non-existence or lapse at any time of Tenant as a legal entity or the existence, non-existence or termination of any corporate, ownership, business or other relationship between Tenant and Guarantor; (xvi) any sale or assignment by Landlord of any or all of this Guaranty, any other guaranty and the Lease (including any direct or collateral assignment by Landlord to any mortgagee); (xvii) the solvency or lack of solvency of Tenant or any Other Guarantor at any time or from time to time; or (xviii) any other cause, whether similar or dissimilar to any of the foregoing, that might constitute a legal or equitable discharge of Guarantor (whether or not Guarantor shall have knowledge or notice thereof) other than payment

and performance in full of the Obligations. Without in any way limiting the generality of the foregoing, Guarantor specifically agrees that (A) if Tenant's obligations under the Lease are modified or amended with the express written consent of Landlord, this Guaranty shall extend to such obligations as so amended or modified without notice to, consideration to, or the consent of, Guarantor, and (B) this Guaranty shall be applicable to any obligations of Tenant arising in connection with a termination of the Lease, whether voluntary or otherwise. Guarantor hereby consents, prospectively, to Landlord's taking or entering into any or all of the foregoing actions or omissions. For purposes of this Guaranty and the obligations and liabilities of Guarantor hereunder, "**Tenant**" shall be deemed to include any and all concessionaires, licensees, franchisees, department operators, assignees, subtenants, permittees or others directly or indirectly operating or conducting a business in or from the Premises or any portion thereof, as fully as if any of the same were the named Tenant under the Lease.

**3.4** Guarantor hereby expressly agrees that the validity of this Guaranty and the obligations of Guarantor hereunder shall in no way be terminated, affected, diminished or impaired by reason of the assertion or the failure to assert by Landlord against Tenant, of any of the rights or remedies reserved to Landlord pursuant to the provisions of the Lease or by relief of Tenant from any of Tenant's obligations under the Lease or otherwise by (i) the release or discharge of Tenant in any state or federal creditors' proceedings, receivership, bankruptcy or other proceeding; (ii) the impairment, limitation or modification of the liability of Tenant or the estate of Tenant in bankruptcy, or of any remedy for the enforcement of Tenant's liability under the Lease, resulting from the operation of any present or future provision of the United States Bankruptcy Code (11 U.S.C. § 101 et seq., as amended), or from other statute, or from the order of any court; or (iii) the rejection, disaffirmance or other termination of the Lease in any such proceeding. This Guaranty shall continue to be effective if at any time the payment of any amount due under the Lease or this Guaranty is rescinded or must otherwise be returned by Landlord for any reason, including the insolvency, bankruptcy, liquidation or reorganization of Tenant, Guarantor or otherwise, all as though such payment had not been made, and, in such event, Guarantor shall pay to Landlord an amount equal to any such payment that has been rescinded or returned.

**4.** **WAIVERS OF GUARANTOR**.

**4.1** Without limitation of the foregoing, Guarantor waives (i) notice of acceptance of this Guaranty, protest, demand and dishonor, presentment, and demands of any kind now or hereafter provided for by any statute or rule of law, (ii) notice of any actions taken by Landlord or Tenant under the Lease or any other agreement or instrument relating thereto, (iii) notice of any and all defaults by Tenant in the payment of Minimum Rent or other rent, charges or amounts, or of any other defaults by Tenant under the Lease, (iv) all other notices, demands and protests, and all other formalities of every kind in connection with the enforcement of the Obligations, omission of or delay in which, but for the provisions of this **Section 4**, might constitute grounds for relieving Guarantor of its obligations hereunder, (v) any requirement that Landlord protect, secure, perfect, insure or proceed against any security interest or lien, or any property subject thereto, or exhaust any right or take any action against Tenant, any Other Guarantor or any other person or entity (including any additional guarantor or Guarantor) or against any collateral, and (vi) the benefit of any statute of limitations affecting Guarantor's liability under this Guaranty.

4

4.2     GUARANTOR HEREBY WAIVES TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY ANY PERSON OR ENTITY WITH RESPECT TO ANY MATTER WHATSOEVER ARISING OUT OF OR IN ANY WAY CONNECTED WITH: THIS GUARANTY; THE LEASE; ANY LIABILITY OR OBLIGATION OF TENANT IN ANY MANNER RELATED TO THE PREMISES OR ANY PORTION THEREOF; ANY CLAIM OF INJURY OR DAMAGE IN ANY WAY RELATED TO THE LEASE AND/OR THE PREMISES (OR ANY PORTION THEREOF); ANY ACT OR OMISSION OF TENANT, ITS AGENTS, EMPLOYEES, CONTRACTORS, SUPPLIERS, SERVANTS, CUSTOMERS, CONCESSIONAIRES, FRANCHISEES, PERMITTEES OR LICENSEES; OR ANY ASPECT OF THE USE OR OCCUPANCY OF, OR THE CONDUCT OF BUSINESS IN, ON OR FROM THE PREMISES (OR ANY PORTION THEREOF). GUARANTOR SHALL NOT INTERPOSE ANY COUNTERCLAIM OR COUNTERCLAIMS OR CLAIMS FOR SET-OFF, RECOUPMENT OR DEDUCTION OF RENT IN ANY ACTION BROUGHT BY LANDLORD AGAINST GUARANTOR UNDER THIS GUARANTY. GUARANTOR SHALL NOT BE ENTITLED TO MAKE, AND HEREBY WAIVES, ANY AND ALL DEFENSES AGAINST ANY CLAIM ASSERTED BY LANDLORD OR IN ANY SUIT OR ACTION INSTITUTED BY LANDLORD TO ENFORCE THIS GUARANTY OR THE LEASE.  IN ADDITION, GUARANTOR HEREBY WAIVES, BOTH WITH RESPECT TO THE LEASE AND WITH RESPECT TO THIS GUARANTY, ANY AND ALL RIGHTS WHICH ARE WAIVED BY TENANT UNDER THE LEASE, IN THE SAME MANNER AS IF ALL SUCH WAIVERS WERE FULLY RESTATED HEREIN.  THE LIABILITY OF GUARANTOR UNDER THIS GUARANTY IS PRIMARY AND UNCONDITIONAL.

4.3     Guarantor expressly waives any and all rights to defenses arising by reason of (i) any "one-action" or "anti-deficiency" law or any other law that may prevent Landlord from bringing any action, including a claim for deficiency, against Guarantor before or after Landlord's commencement or completion of any action against Tenant or any Other Guarantor; (ii) ANY ELECTION OF REMEDIES BY LANDLORD (INCLUDING ANY TERMINATION OF THE LEASE) THAT DESTROYS OR OTHERWISE ADVERSELY AFFECTS GUARANTOR'S SUBROGATION RIGHTS OR GUARANTOR'S RIGHTS TO PROCEED AGAINST TENANT FOR REIMBURSEMENT; (iii) any disability, insolvency, bankruptcy, lack of authority or power, death, insanity, minority, dissolution, or other defense of Tenant, of any other guarantor (or any other Guarantor), or of any other person or entity, or by reason of the cessation of Tenant's liability from any cause whatsoever, other than full and final payment in legal tender and performance of the Obligations; (iv) any right to claim discharge of any or all of the Obligations on the basis of unjustified impairment of any collateral for the Obligations; (v) any change in the relationship between Guarantor and Tenant or any Other Guarantor or any termination of such relationship; (vi) any irregularity, defect or unauthorized action by any or all of Landlord, Tenant, any Other Guarantor or surety, or any of their respective officers, directors or other agents in executing and delivering any instrument or agreements relating to the Obligations or in carrying out or attempting to carry out the terms of any such agreements; (vii) any assignment, endorsement or transfer, in whole or in part, of the Obligations, whether made with or without notice to or consent of Guarantor; (viii) if the recovery from Tenant or any other Person (including any Other Guarantor) becomes barred by any statute of limitations or is otherwise prevented; (ix) the benefits of any and all statutes, laws, rules or regulations applicable in the State of Illinois which may require the prior or concurrent joinder of any other party to any action on this Guaranty; (x) any release or other reduction of the

Obligations arising as a result of the expansion, release, substitution, deletion, addition, or replacement (whether or not in accordance with the terms of the Lease) of the Premises or any portion thereof; or (xi) any neglect, delay, omission, failure or refusal of Landlord to take or prosecute any action for the collection or enforcement of any of the Obligations or to foreclose or take or prosecute any action in connection with any lien or right of security (including perfection thereof) existing or to exist in connection with, or as security for, any of the Obligations, it being the intention hereof that Guarantor shall remain liable as a principal on the Obligations notwithstanding any act, omission or event that might, but for the provisions hereof, otherwise operate as a legal or equitable discharge of Guarantor.  Guarantor hereby waives all defenses of a surety to which it may be entitled by statute or otherwise.

5.  **SUBORDINATION; SUBROGATION**.

**5.1**  Guarantor subordinates to the Obligations (i) any present and future debts and obligations of Tenant or any Other Guarantor to Guarantor (the "**Indebtedness**"), including: (A) salary, bonuses, and other payments pursuant to any employment arrangement; (B) fees, reimbursement of expenses and other payments pursuant to any independent contractor arrangement; (C) principal and interest pursuant to any Indebtedness; (D) distributions payable to any partners, members or shareholders of Guarantor or Affiliates of Guarantor; (E) lease payments pursuant to any leasing arrangement; (F) any management fees; and (G) all rights, liens and security interests of Guarantor, whether now or hereafter arising, in any assets of the Tenant or any Other Guarantor, and (ii) any liens or security interests securing payment of the Indebtedness.  Guarantor shall have no right to possession of any assets of Tenant or any Other Guarantor or to foreclose upon any such asset, whether by judicial action or otherwise, unless and until the Obligations have been paid and performed in full.  Guarantor agrees that Landlord shall be subrogated to Guarantor with respect to Guarantor's claims against Tenant or any Other Guarantor and Guarantor's rights, liens and security interest, if any, in any of Tenant's or any Other Guarantor's assets and proceeds thereof until all of the Obligations have been paid and performed in full.

**5.2**  After the occurrence of an Event of Default and until such Event of Default is cured or after the commencement of any bankruptcy or insolvency proceeding by or against Tenant and until such proceeding is dismissed, Guarantor shall not: (i) make any distributions, dividends or other similar payments to any partners, parent entities, or Affiliates of Guarantor (other than to Tenant); or (ii) ask for, sue for, demand, take or receive any payment, by setoff or in any other manner, including the receipt of a negotiable instrument, for all or any part of the Indebtedness owed by Tenant, or any successor or assign of Tenant, including a receiver, trustee or debtor in possession (the term "**Tenant**" shall include any such successor or assign of Tenant) until the Obligations have been paid in full; however, if Guarantor receives such a payment, Guarantor shall immediately deliver the payment to Landlord for credit against the then outstanding balance of the Obligations, whether matured or unmatured.  Notwithstanding anything in this **Section 5** to the contrary, (a) prior to an Event of Default that has occurred and is continuing, management fees and reimbursements provided for in that certain Management Services Agreement between Tenant and Atrium Consulting and Management Services – Midwest LLC, a Wisconsin limited liability company and an Affiliate of Guarantor, may be paid by Tenant as required thereunder, and (b) after an Event of Default has occurred and is outstanding, Guarantor may make cash contributions to Tenant.

**5.3** Guarantor shall not be subrogated, and hereby waives and disclaims any claim or right against Tenant by way of subrogation or otherwise, to any of the rights of Landlord under the Lease or otherwise, or in the Premises (or any portion thereof), which may arise by any of the provisions of this Guaranty or by reason of the performance by Guarantor of any of its Obligations hereunder. Guarantor shall look solely to Tenant for any recoupment of any payments made or costs or expenses incurred by Guarantor pursuant to this Guaranty. If any amount shall be paid to Guarantor on account of such subrogation rights at any time when all of the Obligations shall not have been paid and performed in full, Guarantor shall immediately deliver the payment to Landlord for credit against the then outstanding balance of the Obligations, whether matured or unmatured.

**6.** **REPRESENTATIONS AND WARRANTIES OF GUARANTOR**. Guarantor represents and warrants that:

**6.1** This Guaranty is valid and binding upon and enforceable against Guarantor without the requirement of further action or condition.

**6.2** The execution, delivery and performance by Guarantor of this Guaranty does not and will not (i) contravene any applicable Legal Requirements, the organizational documents of Guarantor, if applicable, any order, writ, injunction, decree applicable to Guarantor, or any contractual restriction binding on or affecting Guarantor or any of its properties or assets, or (ii) result in or require the creation of any lien, security interest or other charge or encumbrance upon or with respect to any of its properties or assets.

**6.3** No approval, consent, exemption, authorization or other action by, or notice to, or filing with, any governmental authority is necessary or required in connection with the execution, delivery or performance by, or enforcement against, Guarantor of this Guaranty or any other instrument or agreement required hereunder.

**6.4** There is no action, suit or proceeding pending or threatened against or otherwise affecting Guarantor before any court or other governmental authority or any arbitrator that may materially adversely affect Guarantor's ability to perform its obligations under this Guaranty.

**6.5** Tenant is directly or indirectly owned and controlled by Guarantor.

**6.6** Guarantor has derived or expects to derive financial and other advantages and benefits directly or indirectly, from the making of the Lease and the payment and performance of the Obligations. Guarantor hereby acknowledges that Landlord will be relying upon Guarantor's guarantee, representations, warranties and covenants contained herein.

**6.7** All reports, statements (financial or otherwise), certificates and other data furnished by or on behalf of Guarantor to Landlord in connection with this Guaranty or the Lease are: true and correct, in all material respects, as of the applicable date or period provided therein; do not omit to state any material fact or circumstance necessary to make the statements contained therein not misleading; and fairly represent the financial condition of Guarantor as of the respective date thereof; and no material adverse change has occurred in the financial condition of Guarantor since the date of the most recent of such financial statements.

7.    **NOTICES**.    Any consents, notices, demands, requests, approvals or other communications given under this Guaranty shall be in writing and shall be given as provided in the Lease, as follows or to such other addresses as either Landlord or Guarantor may designate by notice given to the other in accordance with the provisions of this **Section 7**:

If to Guarantor:

KBWB Operations, LLC
1120 Alps Road
Wayne, New Jersey 07470
c/o Kevin P. Breslin

If to Landlord:

c/o Care Capital Properties, Inc.
353 North Clark Street, Suite 2900
Chicago, Illinois  60654
Attention:     Lease Administration
Telephone:    (312) 881-4700
Fax No.:       (312) 881-4799

With a copy to:

c/o Care Capital Properties, Inc.
353 N. Clark Street, Suite 2900
Chicago, Illinois  60654
Attention:     Legal Department
Telephone:    (312) 881-4700
Fax No.:       (312) 881-4798

With a copy to:

Fultz Maddox Dickens PLC
101 S. Fifth Street, Suite 2700
Louisville, Kentucky  40202
Attention:     Everett Nelson, Esq.
Telephone:    (502) 588-2000
Fax No.:       (502) 588-2020

8.    **CONSENT TO JURISDICTION**.  Guarantor hereby (a) consents and submits to the jurisdiction of the courts of the State of Illinois and the federal courts sitting in the State of Illinois with respect to any dispute arising, directly or indirectly, out of this Guaranty, (b) waives any objections which the undersigned may have to the laying of venue in any such suit, action or proceeding in either such court, (c) agrees to join Landlord in any petition for removal to either such court, and (d) irrevocably designates and appoints Tenant as its authorized agent to accept and acknowledge on its behalf service of process with respect to any disputes arising, directly or indirectly, out of this Guaranty.  The undersigned hereby acknowledges and agrees that Landlord may obtain personal jurisdiction and perfect service of process through Tenant as the undersigned agent, or by any other means now or hereafter permitted by applicable law.  Nothing above shall limit Landlord's choice of forum for purposes of enforcing this Guaranty.

9.    **CERTAIN ADDITIONAL COVENANTS**.

9.1    **Financial Deliveries**.  Guarantor shall deliver the following information to Landlord:

**9.1.1** As soon as available, and in any event within 120 days after the close of each calendar year, in hard copy and electronic format, in form satisfactory to Landlord, and presented on a consolidated as well as a property-by-property basis, complete financial statements prepared for such year with respect to Guarantor and, if applicable, its Consolidated Subsidiaries (as defined below), including a balance sheet as of the end of such year, together with related statements of operations, cash flows and changes in equity for such calendar year, prepared in accordance with GAAP applied on a consistent basis. Such financial statements shall be audited by Pricewaterhouse Coopers, Deloitte, Ernst & Young, KPMG, Clifton Larson Allen or such other nationally-recognized accounting firm acceptable to Landlord in its reasonable discretion. Together with Guarantor's financial statements, Guarantor shall furnish to Landlord a certificate, executed by Guarantor or, if applicable, Guarantor's CEO (or equivalent) (a) certifying as of the date thereof whether to the best of such Guarantor's knowledge there exists an event or circumstance which constitutes a default or Event of Default under the Lease and if such default or Event of Default exists, the nature thereof, the period of time it has existed and the action then being taken to remedy the same, and (b) certifying that the information contained in such financial statements is true and correct in all material respects and complies with the provisions of this **Section 9**. As used herein, "**Consolidated Subsidiary**" shall mean, with respect to Guarantor, any subsidiary or other entity the accounts of which would be consolidated with those of Guarantor in its consolidated financial statements if such statements were prepared as of such date.

**9.1.2** As soon as available and in any event within 45 days after the end of each calendar quarter, in form satisfactory to Landlord, (a) an unaudited consolidated balance sheet of Guarantor and, if applicable, its Consolidated Subsidiaries, together with the related consolidated and consolidating statements of operations for such quarter and for the portion of the calendar year ended at such quarter and a consolidated statement of cash flows for the portion of the year at the end of such quarter, all of which shall be prepared on a comparative basis with the same periods of the previous year (to the extent available) in accordance with GAAP, and (b) Guarantor's calculation of the Required Annual Capital Expenditures Amount as of the end of that quarter. Together with Guarantor's interim financial statements, Guarantor shall furnish to Landlord a certificate, executed by Guarantor or, if applicable, Guarantor's CEO (or equivalent) (1) certifying as of the date thereof whether to the best of such Guarantor's knowledge there exists an event or circumstance which constitutes a default or Event of Default under the Lease and if such default or Event of Default exists, the nature thereof, the period of time it has existed and the action then being taken to remedy the same, (2) and certifying that the information contained in such financial statements is true and correct in all material respects.

**9.1.3** As soon as available and in any event within 30 days after the end of each calendar month (and, with respect to the calendar month immediately preceding the month hereof, 30 days following the end of such calendar month), an unaudited consolidated balance sheet of Guarantor and, if applicable, its Consolidated Subsidiaries, together with the related consolidated and consolidating statements of operations for such month and for the portion of the calendar year ended at such month and a consolidated statement of cash flows for the portion of the calendar year ended at the end of such month, all of which shall be prepared on a comparative basis with the same periods of the previous year (to the extent available) and in accordance with GAAP.

**9.1.4** Guarantor shall deliver to Landlord its annual federal tax returns within 30 days after the filing thereof with the Internal Revenue Service.

Upon the delivery of any financial information by or on behalf of Guarantor pursuant to this **Section 9** from time to time during the Lease Term, Guarantor shall be deemed (unless Guarantor specifically states otherwise in writing) to automatically represent and warrant to Landlord that the financial information delivered to Landlord is true, accurate and complete, presents fairly the results of operations of Guarantor for the respective periods covered thereby, reflects accurately the books and records of account of Guarantor as of such dates and for such periods, and that there has been no adverse change in the financial condition of Guarantor since the date of the then applicable financial information.

**9.2** **Disclosure**. Guarantor agrees that any financial statements of Guarantor and, if applicable, its Consolidated Subsidiaries, required to be delivered to Landlord may, without the prior consent of, or notice to, Guarantor, be included and disclosed, to the extent required by applicable law, regulation or stock exchange rule, in offering memoranda or prospectuses, or similar publications in connection with syndications, private placements or public offerings of Landlord's (or the entities directly or indirectly controlling Landlord) securities or interests, and in any registration statement, report or other document permitted or required to be filed under applicable federal and state laws, including those of any successor to Landlord. Guarantor agrees to provide such other reasonable financial and other information necessary to facilitate a private placement or a public offering or to satisfy the SEC or regulatory disclosure requirements. Guarantor agrees to use commercially reasonable efforts to cause its independent auditors, at Landlord's cost, to consent, in a timely manner, to the inclusion of their audit report issued with respect to such financial statements in any registration statement or other filing under federal and state laws and to provide the underwriters participating in any offering of securities or interests of Landlord (or the entities directly or indirectly controlling Landlord) with a standard accountant's "comfort" letter with regard to the financial information of Guarantor and, if applicable, its Consolidated Subsidiaries included or incorporated by reference into any prospectus or other offering document.

**9.3** **Review Right**. Landlord shall have the right, from time to time during normal business hours after three Business Days prior oral or written notice to Guarantor, itself or through any attorney, accountant or other agent or representative retained by Landlord ("**Landlord's Representatives**"), to examine and audit all financial and other records and pertinent corporate documents of Guarantor at the office of Guarantor or such other Person that maintains such records and documents and to make such copies or extracts thereof as Landlord or Landlord's Representatives may request and Guarantor hereby agrees to reasonably cooperate with any such examination or audit; provided, however, the cost of such examination or audit shall be borne by Landlord, except during the continuation of an Event of Default, in which case, the cost of any such examination or audit shall be borne by Guarantor and shall be payable within 15 days of Landlord's written demand therefor.

**9.4** **Assignment; Sale of Assets; Change in Control**. Without the prior consent of Landlord, which consent may be withheld or granted in Landlord's sole discretion, Guarantor shall not assign (whether directly or indirectly), in whole or in part, this Guaranty or

any obligation hereunder or, through one or more step transactions or tiered transactions, do, or permit to be done, any activity, transaction or Transfer prohibited under **Section 11** of the Lease.

       **9.5**    **Payment Method; Default Interest**.  Guarantor shall make any payments due hereunder in immediately available funds by wire transfer to Landlord's bank account as notified by Landlord, unless Landlord agrees to another method of payment of immediately available funds. If Guarantor does not pay an amount due hereunder on its due date, Guarantor shall pay, on demand, interest at the Agreed Rate on the amount due for a period ending on the full payment of such amount, including the day of repayment, whether before or after any judgment or award, to the extent permitted under applicable law.

     **10.**    **FINANCIAL COVENANTS**.  Until the payment and performance in full of the Obligations, Guarantor shall maintain, at a minimum, the Tangible Net Worth and Fixed Charge Coverage Ratio (each as defined on **Exhibit A** attached hereto) set forth on **Schedule 2** attached hereto.  The Tangible Net Worth and Fixed Charge Coverage Ratio of Guarantor shall be measured as of the last day of each calendar quarter and evidence of the compliance by Guarantor of this **Section 10**, which evidence shall be certified as true and correct by Guarantor or, if applicable, Guarantor's CEO (or equivalent), shall be submitted to Landlord concurrently with the delivery of the quarterly financial statements required under **Section 9.1.2** above. Guarantor hereby represents and warrants to Landlord that as of the date hereof, Guarantor's Tangible Net Worth equals or exceeds the Tangible Net Worth set forth on **Schedule 2**.  If Guarantor changes the method by which it reports the value of its assets or consolidated liabilities, then Landlord and Guarantor may modify the definition of Tangible Net Worth in **Exhibit A** and the Tangible Net Worth threshold set forth on **Schedule 2** by mutual written agreement.

     **11.**    **MISCELLANEOUS**.

       **11.1**    Guarantor further agrees that Landlord may, without notice, assign this Guaranty in whole or in part.  If Landlord disposes of its interest in the Lease, "**Landlord**", as used in this Guaranty, shall mean Landlord's successors and assigns.

       **11.2**    Guarantor promises to pay all costs of collection or enforcement incurred by Landlord in exercising any remedies provided for in the Lease or this Guaranty whether at law or in equity.  If any legal action or proceeding is commenced to interpret or enforce the terms of, or obligations arising out of, this Guaranty, or to recover damages for the breach thereof, the party prevailing in any such action or proceedings shall be entitled to recover from the non-prevailing party all attorneys' fees and reasonable costs and expenses incurred by the prevailing party.  As used herein, "attorneys' fees" shall mean the fees and expenses of counsel to the parties hereto, which may include printing, photocopying, duplicating and other expenses, air freight charges, and fees billed for law clerks, paralegals, librarians and others not admitted to the bar but performing services under the supervision of an attorney.  The term "attorneys' fees" shall also include all such fees and expenses incurred with respect to appeals, arbitrations and bankruptcy proceedings.

       **11.3**    Guarantor shall, from time to time within 10 days after receipt of Landlord's request, execute, acknowledge and deliver to Landlord a statement certifying that this

Guaranty is unmodified and in full force and effect (or if there have been modifications, that the same is in full force and effect as modified and stating such modifications), and setting forth such other information as Landlord may reasonably request. Such certificate may be relied upon by any prospective purchaser, lessor or lender of all or a portion of the Premises (or any portion thereof).

      **11.4**    If any portion of this Guaranty shall be deemed invalid, unenforceable or illegal for any reason, such invalidity, unenforceability or illegality shall not affect the balance of this Guaranty, which shall remain in full force and effect to the maximum permitted extent.

      **11.5**    The provisions, covenants and guaranties of this Guaranty shall be binding upon Guarantor and its heirs, successors, legal representatives and assigns, and shall inure to the benefit of Landlord and its successors and assigns, and shall not be deemed waived or modified unless such waiver or modification is specifically set forth in writing, executed by Landlord or its successors and assigns, and delivered to Guarantor.

      **11.6**    Whenever the words "include", "includes", or "including" are used in this Guaranty, they shall be deemed to be followed by the words "without limitation", and, whenever the circumstances or the context requires, the singular shall be construed as the plural, the masculine shall be construed as the feminine and/or the neuter and vice versa. This Guaranty shall be interpreted and enforced without the aid of any canon, custom or rule of law requiring or suggesting construction against the party drafting or causing the drafting of the provision in question.

      **11.7**    Each of the rights and remedies herein provided are cumulative and not exclusive of any rights or remedies provided by law or in the Lease or this Guaranty.

      **11.8**    The provisions of this Guaranty shall be governed by and interpreted solely in accordance with the internal laws of the State of Illinois, without giving effect to the principles of conflicts of law.

      **11.9**    The execution of this Guaranty prior to execution of the Lease shall not invalidate this Guaranty or lessen the Obligations of Guarantor hereunder.

      **11.10**    This Guaranty may be executed and delivered electronically (including via email or facsimile transmission), which shall be deemed to be the execution and delivery of an original.

      **11.11**    The Recitals set forth above are hereby incorporated by this reference and made a part of this Guaranty. Guarantor hereby represents and warrants that the Recitals are true and correct.

      **11.12**    Guarantor hereby acknowledges and agrees to be bound by the restrictive covenants set forth in **Exhibit G** to the Lease.

      **11.13**    This Guaranty contains the entire agreement of Landlord and Guarantor as to the subject matter hereof and supersedes all prior written or oral agreements or understandings and contemporaneous oral agreements or understandings.

**IN WITNESS WHEREOF,** Guarantor has executed this Guaranty as of the day and year first above written.

GUARANTOR:

**KBWB OPERATIONS, LLC**,
a New Jersey limited liability company

By: _____

Name: _Kevin P. Breslin_____

Its:__Manager_____

*Signature Page to Guaranty*

<u>**EXHIBIT A**</u>

**CERTAIN DEFINED TERMS**

As used in **Section 10** of this Guaranty, the following terms shall have the meanings set forth below:

"**Acquisition**" means, by any Person, the purchase or acquisition by such Person of any Capital Stock in another Person or any asset of another Person, whether or not involving a merger or consolidation with such other Person.

"**Annualized**" means, with respect to an amount, (i) if relating to a period that is less than full year, (a) such amount, divided by (b) the number of days in in such period, multiplied by (c) 365, or (ii) if not relating to a period that is less than full year, such amount.

"**Capital Lease**" means, as applied to any Person, any lease of any property (whether real, personal or mixed) by that Person as lessee which, in accordance with GAAP and in the reasonable judgment of such Person, is required to be accounted for as a capital lease on the balance sheet of that Person.

"**Capital Stock**" shall mean, with respect to any entity, any capital stock (including preferred stock), shares, interests, participation or other ownership interests (however designated) of such entity and any rights (other than debt securities convertible into or exchangeable for capital stock), warrants or options to purchase any thereof; provided, however, that leases of real property that provide for contingent rent based on the financial performance of the tenant shall not be deemed to be Capital Stock.

"**Consolidated Adjusted EBITDAR**" means, for Guarantor and, if applicable, its Consolidated Subsidiaries determined on a consolidated basis, for a particular period, (i) Annualized Consolidated EBITDAR for such period, minus (ii) the Required Annual Capital Expenditures Amount at the end of such period.

"**Consolidated Cash Interest Expense**" means the portion of Consolidated Interest Expense paid or payable during the period used to calculate such Consolidated Interest Expense.

"**Consolidated EBITDAR**" means, for any period, for Guarantor and, if applicable, its Consolidated Subsidiaries determined on a consolidated basis, Consolidated Net Income for such period, plus without duplication, to the extent deducted in determining Consolidated Net Income, the sum for such period of (i) amortization and depreciation expense, (ii) provision for income taxes (including provision for deferred taxes not payable currently), (iii) Consolidated Interest Expense, (iv) Rent Expense, and (v) non-cash charges as are reasonably acceptable to Landlord; but, excluding, for purposes hereof to the extent included in determining Consolidated Net Income for such period (a) extraordinary gains and losses and related tax effects thereon, (b) other non-cash gains and losses thereon as are reasonably acceptable to Landlord, and (c) the amount of interest income, all as determined for such period in conformity with GAAP.

"**Consolidated Fixed Charges**" means, for Guarantor and, if applicable, its Consolidated Subsidiaries determined on a consolidated basis, for a particular period, the following determined

A-1

in accordance with GAAP: the sum of the principal amount of long term Debt and Capital Leases paid or payable (but without double counting) during such period plus Consolidated Cash Interest Expense and Rent Expense for such period.

"**Consolidated Interest Expense**" means, for a given period, all interest expense for Guarantor and, if applicable, its Consolidated Subsidiaries during such period determined on a consolidated basis for such period taken as a single accounting period in accordance with GAAP, including amortization of debt discount and premium, the interest component under Capital Leases (and also including, to the extent required under GAAP, the implied interest component under a securitization) and all payments due under Interest Rate Protection Agreements by Guarantor and its Consolidated Subsidiaries determined on a consolidated basis (net of payments to such parties by any counter party thereunder), but excluding the amortization of any deferred financing fees.

"**Consolidated Net Income**" means, for any given period, the net income or loss of Guarantor and, if applicable, its Consolidated Subsidiaries during such period (including net income or net loss attributable to non-controlling interests) determined on a consolidated basis for such period taken as a single accounting period in accordance with GAAP; provided that there shall be excluded from such determination of net income or loss (i) adjustments for straight-line rent accounting, (ii) the income or loss of any Person (other than the Consolidated Subsidiaries) in which Guarantor or any of its Consolidated Subsidiaries has an equity investment or comparable interest, except to the extent of the amount of dividends or other distributions actually received by Guarantor or any Consolidated Subsidiary in cash on a non-contingent basis, without any obligation to return such dividend or distribution by the Guarantor or any Consolidated Subsidiary, (iii) income or loss of a Person accrued prior to the date it becomes a Consolidated Subsidiary or is merged or consolidated with or such Person's assets are acquired by Guarantor or any of its Consolidated Subsidiaries and (iv) any after tax gains or losses attributable to sales of non-current assets out of the ordinary course of business and write-downs of non-current assets in anticipation of losses to the extent they have decreased net income.

"**Consolidated Subsidiary**" shall mean at any date, any subsidiary or other entity the accounts of which would be consolidated with those of Guarantor in its consolidated financial statements if such statements were prepared as of such date.

"**Debt**" of Guarantor or any of its Consolidated Subsidiaries shall mean, without duplication, any indebtedness of Guarantor or any of its Consolidated Subsidiaries, whether or not contingent, in respect of: (i) borrowed money as evidenced by bonds, notes, debentures or similar instruments; (ii) indebtedness for borrowed money secured by any encumbrance existing on property owned by Guarantor or its Consolidated Subsidiaries, to the extent of the lesser of (x) the amount of indebtedness so secured or (y) the fair market value of the property subject to such encumbrance; (iii) all reimbursement obligations in connection with any letters of credit or amounts representing the balance deferred and unpaid of the purchase price of any property or services, except any such balance that constitutes an accrued expense, trade payable, conditional sale obligation or obligation under any title retention agreement; (iv) all net obligations of such Person under any Interest Rate Protection Agreement valued in accordance with GAAP; (v) all obligations in respect of any preferred equity to the extent payments are being made thereon;

01240176.2                                  A-2

(vi) indebtedness of any partnership or joint venture or other similar entity in which such Person is a general partner or joint venturer and, as such, has personal liability for such obligations, but only if and to the extent there is recourse to such Person for payment thereof; (vii) any obligations of Guarantor and its Consolidated Subsidiaries with respect to redemption, repayment or other repurchase of any Equity Interest or the principal amount of any subordinated Debt (regardless of whether interest or principal is then-currently payable with respect thereto); (viii) any lease of property by Guarantor or any of its Consolidated Subsidiaries as lessee which is reflected as a capital lease obligation on the consolidated balance sheet of Guarantor or its Consolidated Subsidiaries; to the extent, in the case of items of indebtedness under clauses (i) through (viii) above, that any such items would appear as a liability on Guarantor's or its Consolidated Subsidiaries' consolidated balance sheet in accordance with GAAP; or (ix) the liquidation preference of any Equity Interest of Guarantor or any shares of preferred stock of any of its Consolidated Subsidiaries to the extent payments are being made thereon.

Debt also includes, to the extent not otherwise included, any obligations by Guarantor and its Consolidated Subsidiaries to be liable for, or to pay, as obligor, guarantor or otherwise (other than for purposes of collection in the ordinary course of business), Debt of another Person including Debt secured by a lien on any assets of such Person, whether or not such Person shall have assumed such indebtedness (provided, that if such Person has not assumed such indebtedness of such other Person, then the amount of indebtedness of such Person shall be equal to the lesser of the amount of the indebtedness of such other Person or the fair market value of the assets of such Person which secure such other indebtedness); it being understood that Debt shall be deemed to be incurred by Guarantor or any of its Consolidated Subsidiaries whenever Guarantor or such Consolidated Subsidiary shall create, assume, guarantee or otherwise become liable in respect thereof; provided, however that a Person shall not be deemed to have incurred Debt (or be liable with respect to such Debt) by virtue of a securitization.

Debt shall not include (a) Debt arising from agreements of Guarantor or any of its Consolidated Subsidiaries providing for indemnification, adjustment or holdback of purchase price or similar obligations, in each case, incurred or assumed in connection with the acquisition or disposition of any business, assets or a subsidiary, other than guarantees of Debt incurred by any Person acquiring all or any portion of such business, assets or subsidiary for the purpose of financing the acquisition, (b) contingent obligations under performance bonds, performance guarantees, surety bonds, appeal bonds or similar obligations incurred in the ordinary course of business and consistent with past practices, or (c) endorsements of instruments for deposit or collection in the ordinary course of business, unless in each case such obligations must be shown as a liability in accordance with GAAP. In the case of Debt as of any date issued with original issue discount, the amount of such Debt shall be the accreted value thereof as of such date.

"**Equity Interest**" means Capital Stock and all warrants, options or other rights to acquire Capital Stock (but excluding any debt security that is convertible into, or exchangeable for, Capital Stock).

"**Fixed Charge Coverage Ratio**" means, for Guarantor and, if applicable, its Consolidated Subsidiaries determined on a consolidated basis for the trailing 12 consecutive month period ending as of any date of determination, the ratio of (i) the Consolidated Adjusted EBITDAR for such period to (ii) the sum of the Consolidated Fixed Charges for such period.

For purposes of computing the Fixed Charge Coverage Ratio, Consolidated Adjusted EBITDAR and Consolidated Fixed Charges shall be normalized on a Pro Forma Basis for any acquisitions and/or divestitures occurring during each fiscal quarter.

"**Interest Rate Protection Agreements**" means any interest rate swap agreement, interest rate cap agreement, synthetic cap, collar or floor or other financial agreement or arrangement designed to protect Guarantor or any Consolidated Subsidiary against fluctuations in interest rates or to reduce the effect of any such fluctuations.

"**Pro Forma Basis**" means, for purposes of determining compliance with any financial covenant hereunder, that the subject transaction shall be deemed to have occurred as of the first day of the applicable period ending on the last day of the applicable period for which annual or quarterly financial statements shall have been delivered in accordance with the provisions of this Guaranty. Further, for purposes of making calculations on a "**Pro Forma Basis**" hereunder, (i) in the case of an asset disposition, (A) income statement items (whether positive or negative) attributable to the property, entities or business units that are the subject of such asset disposition shall be excluded to the extent relating to any period prior to the actual date of the subject transaction, and (B) Debt paid or retired in connection with the subject transaction shall be deemed to have been paid and retired as of the first day of the applicable period; and (ii) in the case of an Acquisition, (A) income statement items (whether positive or negative) attributable to the property, entities or business units that are the subject of such Acquisition shall be included to the extent relating to any period prior to the actual date of the subject transaction, and (B) Debt incurred in connection with the subject transaction shall be deemed to have been incurred as of the first day of the applicable period (and interest expense shall be imputed for the applicable period utilizing the actual interest rates thereunder or, if actual rates are not ascertainable, assuming prevailing interest rates).

"**Rent Expense**" means rent expense computed under and in accordance with GAAP, exclusive of any non-cash adjustment under GAAP for the straight lining of rent.

"**Required Annual Capital Expenditures Amount**" means the sum of (a) the aggregate annual amount that Guarantor and all Consolidated Subsidiaries are contractually required to spend on capital expenditures (or similar upgrade expenditures, including Upgrade Expenditures as defined in the Lease) at skilled nursing facilities and assisted living facilities operated by Guarantor and its Consolidated Subsidiaries plus (b) the aggregate annual amount that Guarantor and all Consolidated Subsidiaries are contractually required to deposit with any owner of or lender on a skilled nursing facility or assisted living facility operated by Guarantor or any of its Consolidated Subsidiaries for capital expenditures (or similar upgrade expenditures, including Upgrade Expenditures as defined in the Lease) at those facilities. If any agreement obligating Tenant to spend or deposit any amounts described in this definition requires Tenant to deposit those amounts and then seek reimbursement from the reserved amounts after spending related amounts, then the "Required Annual Capital Expenditures Amount" shall only include the greater of the amount that Tenant is obligated to spend on an annual basis under that agreement or the amount that Tenant is obligated to reserve on an annual basis under that agreement.

"**Tangible Net Worth**" means, as of any date of determination, for Guarantor and, if applicable, its Consolidated Subsidiaries determined on a consolidated basis, an amount equal to

Guarantor's assets as of such date, *minus* (i) the total consolidated liabilities of Guarantor as of such date and (ii) the total intangible assets of Guarantor as of such date, each as determined in accordance with GAAP.

## <u>SCHEDULE 1</u>

## LANDLORDS AND TENANTS

| Landlord | Tenant |
|---|---|
| CCP Colony Oaks 0767 LLC, a Delaware limited liability company | 601 Briarcliff Drive Operating Company, LLC, a Wisconsin limited liability company |
| CCP Vallhaven 0770 LLC, a Delaware limited liability company | 125 Byrd Avenue Operating Company, LLC, a Wisconsin limited liability company |
| CCP Kennedy Park 0771 LLC, a Delaware limited liability company | 6001 Alderson Street Operating Company, LLC, a Wisconsin limited liability company |

## SCHEDULE 2

### FINANCIAL COVENANTS

**Tangible Net Worth:  -$75,000,000**

**Fixed Charge Coverage Ratio:  1.3 to 1.0**